The **PEOPLE of the State of Colorado,**
Plaintiff-Appellee,

v.

**Robin Roy PELTZ,**
Defendant-Appellant.

**No. 82CA1241.**

Colorado Court of Appeals,
Div. II.

Aug. 23, 1984.

Rehearing Denied Sept. 20, 1984.

Certiorari Granted March 25, 1985.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Laura E. Udis, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Mary G. Allen, Denver, for defendant-appellant.

BERMAN, Judge.

Defendant, Robin Roy Peltz, appeals his conviction by a jury of burglary, conspiracy to commit burglary, theft over $10,000, and conspiracy to commit theft over $10,000. We affirm.

On October 7, 1980, a scuba supply shop was burglarized and over 200 items with a retail value of $50,000 and a wholesale value of about $30,000 were taken. The owners of the burglarized shop offered a $2,000 reward for information regarding the burglary and, based upon information provided to the Colorado Bureau of Investigation by defendant's high school friend, James Vest, defendant was arrested in June 1981.

The defendant, as well as co-defendnts Robin Pappadakis and David Lindholm, were charged with burglary, conspiracy to commit burglary, theft over $10,000, and conspiracy to commit theft over $10,000. Pappadakis was defendant's girlfriend and Lindholm was a plumber for whom defendant worked as an apprentice.

Defendant and Pappadakis were tried jointly, while Lindholm was tried separately. Both defendant and Pappadakis elected to testify at their joint trial, and Vest was the key prosecution witness. Pappadakis was convicted of theft and conspiracy to commit theft and acquitted of second degree burglary. Defendant, however, was convicted on all counts with which he was charged and was sentenced on August 3, 1981, to concurrent terms of four years each for burglary and conspiracy and five years for theft. This appeal followed.

I.

Defendant's first contention is that the trial court erred in denying his repeated motions for severance from co-defendant Pappadakis. We disagree.

For a defendant to be entitled to severance of his trial from that of a co-defendant the following two-pronged test must be satisfied: (1) there must be material evidence admissible against one but not all of the parties; and (2) admission of that evidence must be prejudicial to the defendant against whom the evidence is not admissible. *People v. Gonzales,* 198 Colo. 450, 601 P.2d 1366 (1979); *see* § 16–7–101, C.R.S. (1978 Repl.Vol. 8); Crim.P. 14.

At trial, co-defendant Pappadakis attempted to impeach Vest's credibility by inquiring into Vest's deferred judgment which he received for his participation in the unrelated crime of arson in Douglas County. Defendant argues that Vest's testimony upon cross-examination by Pappadakis that Vest's deferred judgment arose from his "covering up the crime for defendant [Peltz]" would not have been admissible against him if he had been tried separately because, although defendant had

been found guilty by a jury of that crime, he had not yet been sentenced on that charge. Defendant argues, further, that, despite the trial court's cautionary instruction to the jury that such evidence was not to be considered in determining defendant's guilt in this case, he was nevertheless prejudiced by the admission of such evidence at his joint trial with Pappadakis. Hence, he concludes his motion to sever his trial from the trial of Pappadakis should have been granted. We disagree.

Contrary to defendant's contention, admission of defendant's previous felony conviction for arson in Douglas County would not have been precluded merely because defendant had not yet been sentenced for that offense. *People v. Johnson,* 192 Colo. 483, 560 P.2d 465 (1977). Although defendant asserts that there had been no disposition of defendant's motion for new trial in the arson case, he points to nothing in the record which supports that assertion as it is his burden to do on appeal. Hence, the first prong of the *Gonzales* test has not been met.

In addition, the second prong of the *Gonzales* test was not met because there is no showing of prejudice to the defendant. Here, the jury was immediately instructed that testimony regarding the defendant's involvement in the Douglas County arson could not be considered against him but could only be considered with respect to co-defendant Pappadakis, and there is a strong presumption that the jury heeded those instructions. *People v. Gonzales, supra.*

Defendant further contends that severance was mandated by virtue of Vest's testimonial reference to the fact that Vest was in protective custody and by the fact that co-defendant Pappadakis was allowed by the trial court to dispel any inference that she had threatened Vest with harm. However, nothing in Vest's protective custody reference implicated the defendant as having been involved with threatening Vest. The jury could easily have inferred that protective custody resulted from Vest's discussions with the Colorado Bureau of Investigation or that it resulted from threats from the severed co-defendant, Lindholm.

In sum, severance of all defendants was not mandatory upon the trial court. Furthermore, inasmuch as the defendant and co-defendant Pappadakis were identically charged, the charges arose from a single criminal episode (the burglary and theft of a scuba supply shop), and both co-defendants asserted the non-antagonistic defenses of general denial of participation in the crime, we hold that the trial court did not abuse its discretion in denying discretionary severance to defendant. *See People v. Gonzales, supra; People v. Warren,* 196 Colo. 75, 582 P.2d 663 (1978).

II.

Defendant's second contention is that the affidavits in support of the warrants to search defendant's car and a mini-warehouse storage unit which he rented were insufficient to establish probable cause and that, therefore, the trial court erred in denying his motion to suppress the numerous articles of diving equipment and a small television set, belonging to the victim, which were seized during the searches. Specifically, defendant argues that the affidavits used to support both search warrants were inadequate in two respects: (1) they failed to establish the reliability of informant Vest, and (2) Vest's information in the affidavits was stale because it failed to establish the items sought were *currently* located in the storage shed and automobile. We disagree.

Defendant's first argument appears to have emerged from a misplaced reliance on the rather rigid *Aguilar-Spinelli* test which previously applied to tips from anonymous or confidential informants. However, that test is no longer applicable, the test now being one in which the "totality of the circumstances" is considered. *People v. Smith,* 685 P.2d 786 (Colo.App.1984); *People v. Sullivan,* 680 P.2d 851 (Colo.App. 1984); *People v. Gallegos,* 680 P.2d 1294 (Colo.App.1983).

■ Here, the information provided by the named informant was both detailed and corroborated by the other information in the affidavits. Hence, under the "totality of circumstances" approach, the affidavits here were sufficient to support the trial court's finding of probable cause to believe that contraband or evidence of criminal activity was located on the premises to be searched.

Both affidavits recited the following facts. Vest initiated his contact with the police and provided the names and addresses of the three perpetrators of the scuba shop burglary and theft; the date and locations of the crimes; the point of entry into the building; and descriptions of some of the stolen items. Vest's information was corroborated by observations of named police officers and by the victim's statements to the officers and detailed lists of stolen equipment attached to the affidavits.

Additionally, Vest related to the officers the unusual fact that the defendant had told him that he had removed the glass on the countertops and fish tanks and had placed them on the floor so as not to break them during the burglary. This fact too was corroborated by the officers' on-the-scene observations of the location of the pieces of glass belonging to the fish tanks and countertops.

Finally, Vest produced a regulator, one of the items stolen from the scuba shop, and gave it to an agent of the Colorado Bureau of Investigation. Taken together, these facts are more than sufficient to supply the requisite probable cause.

■ Defendant's second argument is that, by the time the search warrant issued some seven months after the crime, Vest's information was stale and any previously existing probable cause had dissipated. This argument is also without merit.

In *People v. Ball*, 639 P.2d 1078 (Colo. 1982), our Supreme Court stated:

"[W]hile an affidavit must contain a sufficient statement of the time of the events relied upon to establish probable cause, it is not necessary that the timing of these events be delineated with exactitude or that the events themselves occur immediately prior to the issuance of the warrant. The test is whether the timing of the events is sufficiently set forth to justify a reasonable belief that seizable objects are present on the premises to be searched."

Here, the affidavits provided that Vest stated that the majority of the stolen property had been moved from an apartment which he shared with the defendant to a storage shed located at a specific address in Aurora, Colorado, which he had seen recently, and further provided that Vest stated that he knew the items were still there because he was advised by defendants Peltz and Lindholm that the property was being used by them. The affidavits further provided that Vest stated that he had seen the television stolen from the victim's store "recently" in the trunk of defendant's automobile, a specific description of which was given. Since the search warrants issued four days after Vest's discussion with the affiant officer and fellow officers, we hold that the timing of the events is sufficiently set forth to justify a reasonable belief that items stolen during the burglary would be found in the storage shed and automobile to be searched. *See People v. Hamer*, 689 P.2d 1147 (Colo.App. 1984).

### III.

Defendant's third contention is that the trial court erred in denying his motion to quash the jury panel and to declare a mistrial based upon the prejudicial remark of one prospective juror, Mr. Gomez, which may have been overheard by other prospective jurors. Again, we disagree.

During a recess, the trial court clerk overheard prospective juror Gomez state in the presence of other prospective jurors and in a joking manner, "Let me practice this, defendant is guilty." The clerk reported that conduct to the court and, following an admission by Gomez that he did make the statement, the trial court granted defendant's challenge for cause as to Go-

mez. In addition, the court agreed to permit the other potential jurors in the jury box to be questioned individually in chambers; however, the court denied defendant's motion to quash the entire jury panel. Upon questioning, each of the potential jurors in the box responded that he had not heard Gomez make any remark.

New jurors were then called to the box and, as each successive juror was examined, he was asked in open court if he had overheard any comments by other prospective jurors. Two jurors, Mr. Fox and Mr. Donovan, stated that they had overheard remarks by Gomez. Each was then questioned in chambers.

Fox related that Gomez had said he thought it was a game and was practicing delivering a guilty verdict. Fox stated that he thought Gomez' "flippant attitude" was "a little strange" in light of the seriousness of the case, but that his capacity to be fair and impartial to both sides in the trial was not in any way compromised or influenced by Gomez' remarks. The defendant challenged Fox for cause and the challenge was denied. The defendant then opted not to exercise a peremptory challenge on Fox, and Fox was seated as a juror.

Prospective juror Donovan stated in chambers that Gomez had commented to him during a recess that the reason the judge and counsel went back into chambers was probably "to smoke a joint." Donovan also related that Gomez stated that he thought that co-defendant Pappadakis was attractive and that "she could offer me something for a not guilty" verdict. Donovan was later excused for cause for an apparently unrelated reason.

Defendant does not object to the trial court's denial of his challenge for cause of juror Fox. Rather, the defendant argues that other prospective jurors "may well have" overheard Gomez' remarks and been prejudiced thereby. However, defendant points to nothing in the record which establishes that other prospective jurors in fact overheard any of Gomez' remarks, much less that they were prejudiced thereby.

Mere speculation as to the possibility of prejudice among the pool of prospective jurors is insufficient to warrant quashing the entire venire and is certainly far short of a scenario which would constitute grounds for a mistrial. Accordingly, the trial court did not err in denying defendant's motion to quash and motion for mistrial.

## IV.

Defendant's next contention is that his statutory right to a speedy trial under § 18-1-405(1), C.R.S. (1978 Repl.Vol. 8), and Crim.P. 48(b)(1) was violated because, although jury selection commenced one day prior to the expiration of the six-month time limitation for speedy trial, jury selection was not completed and the jury was not sworn until five days after the six-month time period had elapsed. On this basis, defendant argues that the trial court erred in denying his motion to dismiss. We do not agree.

Section 18-1-405(1), C.R.S. (1978 Repl. Vol. 8) and Crim.P. 48(b)(1) provide that a defendant must be "brought to trial on the issues raised by the complaint, information, or indictment within six months from the date of the entry of a plea of not guilty." Here, defendant entered his not guilty plea on September 3, 1981, and jury selection in this case commenced on March 2, 1981. The jury was empaneled and sworn and the first prosecution witness was sworn on March 8, 1982.

Defendant submits that an accused is "brought to trial" for purposes of the speedy trial statute at the same time that jeopardy attaches—namely, at the moment the jury is empaneled and the first witness is sworn. However, in *People v. Erickson*, 194 Colo. 557, 574 P.2d 504 (1978), our Supreme Court specifically rejected the argument that a trial does not begin and, therefore, that a "mistrial" cannot be declared prior to the swearing of the jury and the attachment of jeopardy. Therefore, we hold that the phrase "brought to trial" under the speedy trial provision refers to the date upon which the

court calls the case for trial, the attorneys indicate their readiness to proceed, and the proceedings commence. Hence, although the empaneling of the jury is determinative as to when a defendant has been placed in jeopardy, it is not determinative of when a defendant is "brought to trial" for purposes of the speedy trial provisions.

Inasmuch as the Supreme Court strongly implied that "trial" had commenced in *Erickson* for purposes of the speedy trial statute, notwithstanding the fact that the jury had not yet been sworn, and inasmuch as the trial court here found that jury selection "proceeded with diligence," we hold that the defendant was not denied his statutory right to a speedy trial. Therefore, the trial court did not err in denying his motion to dismiss.

## V.

Defendant's final contention is that the trial court erred in failing, *sua sponte*, to rule inadmissible at trial Vest's testimony regarding his out-of-court statements to a Mr. LaVoie, a friend of Vest who was a lieutenant in the fire department. Once again, we disagree.

Defendant did not object to Vest's testimony at trial, nor did he include any objection to Vest's testimony in his motion for new trial. Hence, our review of the issue is precluded unless the defendant establishes plain error seriously affecting his substantial rights. Crim.P. 52(b); *People v. Peterson*, 656 P.2d 1301 (Colo.1983). Here, there is no such plain error.

Defendant complains specifically of Vest's testimony that he related "some of the basics" about the burglary incident to LaVoie and that he "was becoming afraid for his life" and wanted to talk to an officer he could trust. Defendant argues that such hearsay was prejudicial to him because it tended to establish his involvement in the burglary and to suggest that he may have threatened Vest's life.

However, both Vest and LaVoie testified at trial and Vest testified at length during his direct examination about defendant's involvement in the scuba shop burglary. Hence, the statements to LaVoie which implicated the defendant were merely cumulative of Vest's previous testimony and, thus, could not have been prejudicial. Therefore, regardless of whether the evidence fell within any hearsay exception, its admission does not constitute reversible error. *People v. O'Donnell*, 184 Colo. 104, 518 P.2d 945 (1974).

As to Vest's recitation of his statement to LaVoie that he was becoming afraid for his life, there is no evidence that these statements were hearsay because they need not have been offered for "the truth of the matter asserted," *see* CRE 801(c), but were, instead, quite probably offered to explain to the jury the reason that Vest subsequently revealed his knowledge of the burglary to local authorities. The testimony was clearly admissible for this purpose. *See People v. Tenorio*, 197 Colo. 137, 590 P.2d 952 (1979).

In addition, had defendant objected, Vest's testimony as to his expression to LaVoie of his fear for his own safety would still have been admissible under CRE 803(3) as a statement of the declarant's "then existing mental, emotional, or physical condition."

Finally, the fact that both declarants, Vest and LaVoie, were subject to cross-examination by defendant at trial negates any possibility of plain error. *See* CRE 801(d)(1).

Judgment affirmed.

SMITH and VAN CISE, JJ., concur.