**Robin Roy PELTZ, Petitioner,**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**Robin PAPPADIAKIS, Petitioner,**

v.

**The PEOPLE of the State of Colorado, Respondent.**

Nos. 84SC390, 85SC171.

Supreme Court of Colorado, En Banc.

Dec. 2, 1986.

---

Mary G. Allen, Denver, for Peltz.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Virginia Byrnes Horton, Asst. Atty. Gen., Denver, for respondent.

David F. Vela, Public Defender, Frances Smylie Brown, Deputy Public Defender, Denver, for Pappadiakis.

ERICKSON, Justice.

Defendants Robin Roy Peltz, Robin Pappadiakis, and David Dean Lindholm were jointly charged in an information with burglary, theft over $10,000, conspiracy to commit burglary, and conspiracy to commit theft over $10,000. Sections 18-4-203, 18-4-401, 18-2-201, 8B C.R.S. (1986). David Dean Lindholm was granted a severance. Peltz and Pappadiakis were jointly tried. Peltz was convicted on all four counts and

Pappadiakis was convicted of theft over $10,000 and conspiracy to commit theft over $10,000. The convictions were affirmed by the court of appeals in separate decisions. *People v. Pappadiakis*, 705 P.2d 983 (Colo.App.1985); *People v. Peltz*, 697 P.2d 766 (Colo.App.1984). We granted certiorari in *Peltz* to consider whether the court of appeals correctly affirmed the trial court's denial of Peltz's timely and repeated motions for severance and suppression of evidence seized pursuant to a search warrant. We granted certiorari to review a similar severance issue in *Pappadiakis*. The cases are consolidated in this opinion because they arise from the same incident and involve closely related factual and legal issues. We affirm the court of appeals in both cases.

I.

Diversified Marine Products (Diversified Marine), a retail shop specializing in scuba equipment and accessories, was burglarized during the late evening or early morning hours of October 6 or 7, 1981. Greenwood Village police officers were summoned by the owner of the store, Randolph Williams (Williams). The police investigation revealed that the burglars pried the back door from its hinges to gain entry. Further investigation disclosed that great care was taken in removing the glass tops from display cases and aquariums so as not to break them. The glass tops were discovered on the shop's floor, beneath the counters. Williams, after reviewing his inventory, concluded that over two hundred items were missing. The stolen property included Williams's personal television set/am-fm radio, numerous underwater flashlights, river rafts, outboard motors, wetsuits, underwater watches for both men and women, and miscellaneous other scuba equipment. The stolen property was itemized by Williams, and the detailed list was given to the police for use in their investigation.

On May 28, 1981, seven months after the Diversified Marine burglary, Detective Joe Dempsey of the Arapahoe County Sheriff's

Department was contacted by James Vest.[1] Vest informed Detective Dempsey that the perpetrators of the burglary were Peltz, Pappadiakis, and David Dean Lindholm. Vest also gave Detective Dempsey a regulator that he acquired from Peltz which was stolen from Diversified Marine.

Detective Dempsey contacted Detective Laird Thornton of the Greenwood Village Police Department, and related the information regarding the burglary. Detectives Dempsey and Thornton met with Vest to discuss the burglary. Vest, an instructor-certified diver, stated that Peltz had approached him and asked how Vest liked Peltz's new scuba equipment. When Vest asked where Peltz acquired the equipment, Peltz related the details of the burglary. Peltz, Pappadiakis, and Lindholm parked their truck and van at the rear of Diversified Marine, pried open the back door, and transferred a large quantity of diving equipment, inflatable boats, and marine engines from the store to their truck. Peltz was primarily responsible for moving the items from the store to the vehicles, and Pappadiakis and Lindholm acted as "lookouts." Peltz mentioned that he was afraid of breaking the glass aquarium and counter tops, and that he removed them and placed them on the floor. Vest was also told that the stolen property was moved to the apartment that Peltz and Vest temporarily shared. The property was later divided between Peltz, Pappadiakis, and Lindholm, and the majority of the property was moved to a shed in a mini-storage warehouse. Vest believed that the property was still stored in the shed because the property was being put to the defendants' personal use.

Vest also told the detectives that he had seen defendant Pappadiakis wearing an underwater watch obtained from the burglary, and some of the women's diving equipment was in her possession. Vest said that he had recently seen a river raft, diving watch and outboard motors in Lindholm's possession. He also saw the television/am-fm unit, which was taken from Diversified Marine and was the personal property of Roger Williams, in the trunk of Peltz's 1978 Camaro.

Four days after his conversation with Vest, Detective Laird Thornton prepared affidavits setting forth the facts as described above. Search warrants were issued for Peltz's car and the shed at the mini-storage unit. Randolph Williams's television set was found in the trunk of Peltz's car. The search of the shed yielded over 180 separate items of diving equipment.

## II.

Peltz moved to suppress the evidence seized pursuant to the execution of the search warrant, and the trial court denied the motion to suppress. The court of appeals affirmed the trial court's ruling. Peltz argues that the evidence should have been suppressed because Vest's reliability as an informant was not established by the affidavit as required by the *Aguilar-Spinelli*[2] rule. We affirm.

---

**1.** Vest was implicated in an investigation of two residential arson fires which occurred on March 8, 1981 in unincorporated Douglas County. One of the burned residences was owned by Lindholm, and Peltz lived in the Lindholm residence immediately before the fire. When Vest contacted Detective Dempsey, he provided information regarding both the arson and the burglary. Vest pleaded guilty to being an accessory to the arson, and he received a deferred judgment of conviction. Peltz was convicted as a principal in the arson case.

**2.** *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). The *Aguilar-Spinelli* test required that an affidavit for a search warrant based on information obtained from a confidential informant must set forth (1) some of the underlying circumstances relied on by the person providing the information, and (2) the underlying circumstances from which the affiant concluded that the informant was credible or his information reliable. *Aguilar,* 378 U.S. at 114, 84 S.Ct. at 1513; *Spinelli,* 393 U.S. at 416, 89 S.Ct. at 589.

The court of appeals held that Peltz's reliance on the "rather rigid *Aguilar-Spinelli* test which previously applied to tips from anonymous or confidential informants" was misplaced. *People v. Peltz*, 697 P.2d at 769 (Colo.App.1984). While the court of appeals decision predated our decision in *People v. Pannebaker*, 714 P.2d 904 (Colo.1986), the lower court's holding is correct. In *Pannebaker*, we followed the "totality of the circumstances" test enunciated in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) for the purpose of determining probable cause under the fourth amendment to the United States Constitution and article II, section 7 of the Colorado Constitution. *People v. Pannebaker*, 714 P.2d at 907.

Under the totality of the circumstances test, "the task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* The analysis "places particular importance on the value of corroboration of the details of an informant's tip by independent police work." *Id.* See also *Illinois v. Gates*, 462 U.S. at 241–246, 103 S.Ct. at 2333–2336.

■ The court of appeals correctly noted the ways in which the investigative efforts of the police were corroborated by the information supplied by Vest. *People v. Peltz*, 697 P.2d at 770. Vest obtained information from an alleged participant in the burglary which corroborated the date and time of the crime, as well as the method of breaking and entering. Vest described the items taken, stated that he had seen several of those items in the possession of Peltz, Pappadiakis, and Lindholm, and actually gave one of the stolen regulators to Detective Thornton. Vest informed Detective Thornton of Peltz's con-

cern about breaking the glass aquarium and counter tops, and how the glass tops had been placed gently on the floor so as not to break them. This unusual fact corroborated the investigating officers' observations at the scene of the burglary. Finally, Vest and the law enforcement authorities with whom he was in contact were identified, and the details of their conversations were set forth with great particularity. We agree with the court of appeals that, taken together, "these facts are more than sufficient to support the requisite probable cause." *People v. Peltz*, 697 P.2d at 770.[3]

### III.

Both defendants contend that the court of appeals erred in affirming the trial court's denial of their motions for severance. We affirm.

■ A defendant is entitled to a severance as a matter of right if (1) there is material evidence admissible against one but not all of the parties, and (2) admission of that evidence is prejudicial to the party against whom the evidence is not admissible. § 16–7–101, 8A C.R.S. (1986); Crim.P. 14; *People v. Gonzales*, 198 Colo. 450, 601 P.2d 1366 (1979). Otherwise, a motion for severance is addressed to the sound discretion of the trial court, and will be affirmed absent a showing of an abuse of discretion and actual prejudice to the moving party. *People v. Horne*, 619 P.2d 53 (Colo.1980).

### A. *Peltz's Motion for Severance*

Peltz contends that he was entitled to a severance, either as a matter of right or in the discretion of the trial court for two reasons. First, Vest was the prosecution's main witness, and counsel for Pappadiakis attempted to impeach Vest by inquiring into his Douglas County arson conviction. *See* n. 1 at 1274. Vest received a deferred

---

3. Both Peltz and the Attorney General briefed the issue of whether the evidence seized under the search warrant should have been suppressed because the affidavit contained stale informa-

tion. The issue was presented in Peltz's petition for certiorari. We denied certiorari as to the "staleness" issue, and it is not addressed in this opinion.

judgment upon his plea of guilty to being an accessory after the fact, and Peltz was found to be guilty of arson as a principal by a Douglas County jury. The questioning was intended to show that Peltz and Vest were at one time "partners in crime," and to impeach Vest's credibility as a witness. Vest testified that the deferred judgment arose out of the fact that he was "covering up the crime for Mr. Peltz." [4] Peltz also claims that he was entitled to a severance because Vest testified that he was in protective custody. Counsel for Pappadiakis was permitted to ask Vest if he was in protective custody because of threats made by Pappadiakis, to which inquiry Vest responded "no." Peltz argues that the line of questioning and the response it elicited allowed the jury to infer that Vest sought protective custody because of threats from Peltz, and required a severance.

**4.** For reasons not in the record, the district attorney stated that evidence of Peltz's arson conviction would not have been admissible against Peltz in a trial against Peltz alone. The court of appeals held that Peltz failed to show on appeal that the arson conviction was inadmissible against him. *People v. Peltz,* 697 P.2d at 769. We do not address the question because we assume that evidence of Peltz's prior felony conviction, for whatever reason, would not have been admissible in a separate trial of Peltz alone except for impeachment purposes.

**5.** There are sound reasons for limiting a defendant's *right* to a separate trial to situations where the prosecution, rather than the codefendant, offers the testimony or evidence that is admissible as to one defendant but inadmissible as to others.

The policy reasons for such a limitation are demonstrated by *de Luna v. United States,* 308 F.2d 140 (5th Cir.1962). De Luna and his codefendant Gomez were jointly tried on a narcotics charge. Both defendants were occupants of a car when the police saw Gomez throw a package of narcotics out. Gomez testified at trial that he was innocent and that de Luna threw him the package and told him to throw it out of the window as soon as the officers approached. De Luna did not testify, but his lawyer argued that Gomez had possession of the package the entire time. Counsel for Gomez was permitted, over de Luna's repeated objections, to comment on de Luna's silence at trial. Gomez was acquitted and de Luna was convicted on all charges. The Fifth Circuit reversed de Luna's conviction, holding that the comments by Gomez's counsel on de Luna's failure to testify violated de Luna's

### 1. *Testimony Regarding Douglas County Arson*

■ The fact that Vest's testimony was inadmissible against Peltz does not automatically entitle Peltz to a severance as a matter of right. Crim.P. 14 states that a defendant

shall be granted a separate trial as of right if the court finds that *the prosecution* probably will present against a joint defendant evidence other than reputation or character testimony, which would not be admissible in a separate trial of the moving defendant, and that such evidence would be prejudicial to those against whom it is not admissible.

(Emphasis added.) The testimony regarding the Douglas County arson conviction was elicited by counsel for Pappadiakis, not the prosecutor.[5]

fifth amendment privilege against self-incrimination. *Id.* at 154. The court, in dicta, implied that the facts of the case gave rise to a per se severance rule:

[C]onsidering the case from Gomez's point of view, his attorneys should be free to draw all rational inferences from the failure of a co-defendant to testify.... Gomez has rights as well as de Luna, and they should be no less than if he were prosecuted singly. *His right to confrontation allows him to invoke every inference from de Luna's absence from the stand.*

*Id.* at 143 (emphasis added).

Judge Bell specially concurred in the result reached by the majority, but noted his disagreement with the majority's conclusion that Gomez had a right to comment on de Luna's silence.

The opinion of the majority will create an intolerable procedural problem. If Gomez ... claims the right which the majority holds that he has to comment on the failure of de Luna to testify, a mistrial will be required at the instance of his co-defendant who did not take the stand. In addition, severance in advance of trial may be required.... This would eliminate joint trials, or vest in a defendant the right to a mistrial during final arguments, or in the alternative create built-in reversible error, *all in the discretion of the defendants.* The law contemplates no such end.

*Id.* at 156 (Bell, J., concurring specially) (emphasis added).

*De Luna's* per se severance rule has not been widely followed. *See, e.g., United States v. Espinosa,* 771 F.2d 1382 (10th Cir.), *cert. denied,* ——

The provision of the Colorado Code of Criminal Procedure that governs separate trials of joint defendants also requires more than mere inadmissibility to justify severance as matter of right. Section 16–7–101, 8A C.R.S. (1986), provides that joint defendants shall be tried separately when "there is *material* evidence, not relating to reputation, which is admissible against one or some of them but which is not admissible against all of them if they are tried separately and which is *prejudicial* to those against whom it is not admissible...." (Emphasis added.) We interpreted section 16–7–101 to mean, in the mandatory severance setting, that the trial court must exercise its discretion and determine "whether the admitted evidence was so inherently prejudicial that the jury could not have limited its use to its proper purpose." *People v. Gonzales*, 198 Colo. at 454, 601 P.2d at 1369.

The trial judge in the present case instructed the jury that "the evidence being elicited from Mr. Vest is being offered in favor of the Defendant Miss Pappadiakis and is not to be considered by you as any evidence against the Defendant Mr. Peltz." There is a strong presumption that the jury followed the trial court's instructions. *People v. Moody*, 676 P.2d 691 (Colo.1984); *People v. Lesh*, 668 P.2d 1362 (Colo.1983); *People v. Smith*, 620 P.2d 232 (Colo.1980).

■ We cannot say that the trial court abused its discretion in finding that the jury would heed the limiting instructions.

The primary purpose of the questioning was not to make a case against Peltz but to discredit the testimony of the prosecution's chief witness by showing a prior felony conviction. *See* § 13–90–101, 6 C.R.S. (1973) (felony conviction admissible for purpose of affecting the credibility of a witness). *Cf. People v. Gonzales*, 198 Colo. at 454, 601 P.2d at 1369. The instruction was precise and comprehensible, and was given immediately after the testimony was elicited. Peltz's participation in the arson was mentioned only once during the cases-in-chief, despite the fact that Vest's testimony spanned three days of trial. The prosecution returned to the general subject of the arson conviction, but the questions were designed solely to bolster Vest's credibility, and Peltz's name was not mentioned again in connection with the arson matter until a reference in the prosecutor's closing argument. Given the ancillary and minimal prejudicial impact of Vest's testimony on Peltz, the trial court did not abuse its discretion in concluding that the jury would have no difficulty in limiting the testimony to its proper purpose.

■ In our view, the trial court also did not err in denying Peltz's motion for severance as a discretionary matter. A trial court may grant a severance if "it appears that a defendant ... is prejudiced by a joinder ... of defendants." Crim.P. 14. Factors to be considered in determining whether denial of severance constitutes an abuse of discretion include (1) whether the number of defendants or the complexity of

U.S. ——, 106 S.Ct. 579, 88 L.Ed.2d 561 (1985); *United States v. McClure*, 734 F.2d 484 (10th Cir.1984); *United States v. Marquez*, 449 F.2d 89 (2d Cir.1971), *cert. denied*, 405 U.S. 963, 92 S.Ct. 1167, 31 L.Ed.2d 239 (1972); *United States v. De La Cruz Bellinger*, 422 F.2d 723 (9th Cir.), *cert. denied*, 398 U.S. 942, 90 S.Ct. 1860, 26 L.Ed.2d 278 (1970); *United States v. McKinney*, 379 F.2d 259 (6th Cir.1967). Much of the criticism of *de Luna* is directed toward the fact that joint defendants can posture the case so as to require a severance under the *de Luna* rule when the prejudicial testimony may not in fact be forthcoming. *See* 2 W. LaFave & J. Israel, *Criminal Procedure* § 17.2(d) (1984), 1 C. Wright, *Federal Practice and Procedure* § 225 (1969–1982).

Both defendants testified in this case, so the precise problem identified in *de Luna* is not at

issue. We have cited *de Luna* with approval in two previous cases, but it is clear that the "distinct element of unfairness" which occurs when a testifying defendant cannot take advantage of the favorable inference to be drawn from a non-testifying codefendant's silence is but one of many factors in determining whether a severance is required. *See People v. Warren*, 196 Colo. 75, 78–79, 582 P.2d 663, 665 (1978); *Eder v. People*, 179 Colo. 122, 124–25, 498 P.2d 945, 946 (1972).

Crim.P. 14's requirement that a defendant is entitled to a separate trial as of right only if the *prosecution* offers evidence which is inadmissible and prejudicial as to a joint defendant, is premised on sound policy concerns.

evidence is such that the jury will confuse the evidence and the law applicable to each defendant; (2) whether, despite admonitory instructions, evidence admissible against one defendant will improperly be considered against another, and (3) whether the defenses are antagonistic. *People v. Warren,* 196 Colo. 75, 77–78, 582 P.2d 663, 665 (1978).

Application of these factors to this case shows that the trial court did not abuse its discretion. There were only two defendants, and the evidence that showed their involvement in the burglary was derived from the testimony of Vest. Limiting instructions were given in clear and concise terms. Pappadiakis's theory of defense was different than Peltz's, in that she tried to show prior criminal involvement between Vest and Peltz. However, Pappadiakis's defense was not antagonistic within the true meaning of the term. Pappadiakis never accused Peltz of committing the crime. This case therefore is distinguishable from *Eder v. People,* 179 Colo. 122, 124, 498 P.2d 945, 946 (1972), where, in a prosecution for possession of narcotics, "[i]t was the theory of each defendant that the hashish belonged not to him, but to the other defendant." *See also United States v. McClure,* 734 F.2d 484, 488 (10th Cir. 1984) (irreconcilable and mutually exclusive defenses may, in some cases, require severance if the record shows actual prejudice). The trial court was aware of the possibility of the different defense theories before trial and took great care in only admitting testimony after proper limiting instructions were given. We conclude that the trial court did not abuse its discretion in denying Peltz's motion to sever based on Vest's testimony implicating Peltz in the Douglas County arson case.

### 2. *Testimony Regarding Protective Custody*

The trial court properly denied the motion for severance on the ground that Vest's testimony regarding his protective custody was prejudicial to Peltz. The court required all references to Peltz be deleted from Pappadiakis's counsel's cross-examination. While comments regarding protective custody occurred sporadically throughout the course of the trial, the questioning as to *why* Vest was in protective custody was cursory and brief. Finally, the jury may well have inferred that Lindholm's animosity toward Vest caused Vest to seek and obtain protective custody. The jury was repeatedly informed of the involvement of Lindholm in the burglary. Vest testified that he was on good terms with Peltz, but stated that Lindholm "particularly did not care for [Vest]." Indeed, even Peltz testified that he and Vest were friends. We conclude that Peltz was not entitled to a severance on the basis of Vest's testimony about his protective custody, and the trial court did not abuse its discretion in denying a severance.

### B. *Pappadiakis's Motion for Severance*

Pappadiakis claims that Vest testified to four conversations with Peltz which took place in her absence and therefore were inadmissible as to her.[6] Vest testi-

---

**6.** It is not clear from the record if Vest's testimony was in fact inadmissible as to Pappadiakis. Vest testified to conversations with Peltz and/or Lindholm, in which Pappadiakis did not participate. However, at the time of the disputed conversations (with the exception of the first conversation between Peltz and Vest which occurred before the Diversified Marine burglary), the trial court found sufficient evidence of a continuing conspiracy between Peltz and Pappadiakis because they were still actively trying to dispose of the fruits of the burglary. An out-of-court statement of a co-conspirator is admissible against a defendant if the statement is made in furtherance of the conspiracy. CRE 801(d)(2)(E); *People v. Small,* 631 P.2d 148, 161

(Colo.), *cert. denied,* 454 U.S. 1101, 102 S.Ct. 678, 70 L.Ed.2d 644 (1981). The prosecution also proceeded against Pappadiakis on a complicity theory. Evidence of the criminal involvement of codefendants Peltz and Lindholm which established their guilt as principals would have been admissible against Pappadiakis if properly limited. *People v. Scheidt,* 182 Colo. 374, 382, 513 P.2d 446, 450–51 (1973). In each of the instances objected to by Pappadiakis, the jury was instructed that the testimony was offered against Peltz alone. The prosecutor sought and obtained a ruling from the trial judge that Vest's testimony was admissible against Pappadiakis, but later seemed to retract

fied that he and Peltz discussed the possibility of burglarizing a diving store before the Diversified Marine burglary. Vest and Peltz had another conversation three or four days after the burglary during which they discussed the value of the stolen property. A third conversation involved Vest and Peltz going to Lindholm's home to look at some of the stolen equipment stored in Lindholm's garage. Finally, Vest related a conversation with Peltz during which they discussed a second diving trip to Mexico in order to use the stolen scuba equipment. Pappadiakis contends that the foregoing testimony was inadmissible and prejudicial as to her, and that she was entitled to severance as a matter of right, or, in the alternative, in the discretion of the court. We disagree.

Pappadiakis was not entitled to severance as a matter of right because the prejudicial impact of inadmissible testimony is addressed to the discretion of the court. *People v. Gonzales*, 198 Colo. at 454, 601 P.2d at 1369. The trial court did not abuse its discretion in concluding that the testimony would not unduly prejudice Pappadiakis. Pappadiakis was never referred to by name during the objectionable portions of the testimony. *See* Standards for Criminal Justice § 13–3.2(a)(ii) (1980). Limiting instructions preceded the testimony in each instance, and the jury acknowledged that they understood the instructions.

■ Nor did the trial court abuse its discretion in denying the motion for severance as a discretionary matter. There were two codefendants who were identically charged with four separate counts arising from the same criminal transaction, all of which provides a rational basis to join the defendants in a single trial. While Pappadiakis's defense was somewhat "antagonistic" to Peltz, Peltz, by simply denying involvement in the burglary, did not assert a defense which was antagonistic or prejudicial to Pappadiakis. Finally, Pappadiakis, unlike her codefendant, was found

not guilty of the burglary and conspiracy to commit burglary. The record supports the trial court's denial of Pappadiakis's motion for severance.

The decisions of the court of appeals are affirmed.

QUINN, C.J., dissents.

DUBOFKSY and LOHR, JJ., join in the dissent.

QUINN, Chief Justice, dissenting:

I dissent from part III of the majority opinion, since I believe the trial court's denial of the defendants' motions for severance was reversible error.

I.

A severance should have been granted to defendant Peltz when prior to trial it became obvious that counsel for Pappadiakis intended to introduce evidence of Peltz's arson conviction in order to impeach the credibility of Vest and show that Peltz and Vest were at one time "partners in crime." Evidence of a criminal defendant's prior criminal acts is inherently prejudicial, whether it is introduced by the prosecution or by a co-defendant. In making such evidence generally inadmissible, our rules of evidence recognize the fundamental principle that a criminal defendant should be tried only for the offense of which he stands charged. *E.g., People v. Geller*, 189 Colo. 338, 340, 540 P.2d 334, 336 (1975); *Stull v. People*, 140 Colo. 278, 283, 344 P.2d 455, 458 (1959). The reasons for excluding evidence of prior unrelated criminality, we have said, are to avoid placing the accused in the position of defending against crimes for which he has not been charged and to guard against the likelihood that such evidence, which has little bearing on the issue of guilt, will assume undue proportions in the minds of jurors, with

---

from his position. The court of appeals understandably decided the question on the "preju-

dice prong" of the mandatory severance test.

resulting prejudice to the defendant. *Callis v. People,* 692 P.2d 1045, 1050–51 (Colo. 1984).

Courts must be particularly sensitive to the potential prejudice that is always inherent in evidence of an accused's prior crimes, and must scrutinize such evidence closely before allowing it to be admitted. The majority's confidence in the ability of a trial court to neutralize the prejudicial effect of such evidence by the use of a limiting instruction is unrealistic. While it is true that we have required courts to give limiting instructions when otherwise inadmissible evidence of prior crimes is to be admitted for a limited purpose, *e.g., Stull,* 140 Colo. at 284, 344 P.2d at 458, it is equally true that such instructions cannot be relied on to offset the effect of evidence so inherently prejudicial to a defendant as that offered in this case.

In *Bruton v. United States,* 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476 (1968), the United States Supreme Court recognized that "there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." To expect that the jury in this case would think about Peltz's arson conviction only as it determined the guilt or innocence of Pappadiakis and then forget that same evidence when it turned to Peltz's case is, in my view, to ignore the practical and human limitations of the jury and to expect from them a "[d]iscrimination so subtle [that it] is a feat beyond the compass of ordinary minds." *People v. Madson,* 638 P.2d 18, 31 (Colo.1981), quoting Justice Cardozo in *Shepard v. United States,* 290 U.S. 96, 104, 54 S.Ct. 22, 25, 78 L.Ed. 196 (1933).

Evidence of Peltz's arson conviction was highly prejudicial and would not have been admissible against him in a separate trial. Peltz's motion for a severance, therefore, should have been granted.

## II.

I also believe that a severance should have been granted to defendant Pappadiakis. Her right to a fair trial was undermined by the extensive evidence that was admitted against Peltz but was simultaneously ruled inadmissible against her. Vest's testimony included references to conversations, held out of the presence of Pappadiakis, in which Vest and Peltz discussed the burglary and the items taken. On several occasions the trial judge ruled such evidence inadmissible against Pappadiakis but admissible against Peltz. The confusion inherent in such rulings was exacerbated by the numerous and conflicting limiting instructions given to the jury. Evidence which the jury was *not* to consider against Pappadiakis was repeated for the jury three times. As in the case of the court's limiting instructions regarding the evidence of Peltz's arson conviction, there is no way in which the jury could realistically have limited its consideration of the evidence in the manner it was ordered to do. The limiting instructions were simply not adequate to cure the prejudice suffered by Pappadiakis as a result of the jury being repeatedly told not to consider the evidence against her.

Since I believe that the trial court's failure to grant a severance in such circumstances was prejudicial error to both defendants, I would reverse the judgment of the court of appeals.

I am authorized to say that Justice DUBOFSKY and Justice LOHR join me in this dissent.