23CA1090 Peo v Villalba 02-19-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1090
El Paso County District Court No. 22CR2994
Honorable Laura N. Findorff, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Kira Lee Villalba,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE HARRIS
Dunn and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 19, 2026

Philip J. Weiser, Attorney General, William G. Kozeliski, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Dilyn K. Myers, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     After her fifteen-month-old child died from fentanyl intoxication, defendant, Kira Lee Villalba, was convicted of child abuse resulting in death and unlawful possession of controlled substances.

¶ 2     On appeal, Villalba contends that the trial court committed reversible error by denying her motion to sever her trial from that of her codefendant, Joenny Astacio, the child's father, and by allowing a police officer to answer a jury question to which her counsel acquiesced.  We reject her contentions and therefore affirm.

I.     Background

¶ 3     On the morning of the child's death, Villalba and Astacio called 911 to report that the child had stopped breathing. Paramedics attempted unsuccessfully to resuscitate the child, then they transported him to a nearby hospital where he was pronounced dead.

¶ 4     Toxicology tests later established that the child died of accidental fentanyl ingestion.  The means of ingestion was unknown, but when police searched the house, they found drug paraphernalia, including foils, pipes, and other smoking devices, scattered around the home, as well as multiple types of drugs.

¶ 5    At the hospital, Villalba told police that she went to sleep with the child at around 11:00 p.m.; that at 9:00 a.m. the next morning, while the child was sleeping, she "took a hit off of her vape," which she said contained nicotine, and fell back asleep; and that, two hours later, Astacio woke her up to tell her something was wrong with the child, and they called 911.

¶ 6    That evening, the parents submitted to drug testing; when the results came back positive for high levels of fentanyl, Villalba and Astacio were charged with reckless child abuse resulting in death and misdemeanor drug possession.

¶ 7    After Astacio's arrest, a detective questioned him about the events surrounding the child's death. When the prosecution later moved to join the parents' cases for trial, Villalba objected, arguing that separate trials were required because the admission of Astacio's statements at a joint trial would violate her rights under the Confrontation Clause. The court disagreed and granted the prosecution's joinder motion.

¶ 8    At trial, the prosecution introduced Astacio's recorded interview, with all references to Villalba redacted, in which he made the following statements:

- Drug addiction is "pure hell," "[e]specially, like, seeing somebody you care about go through it."

- He smoked fentanyl with a friend all night, "up until the point" he found the child nonresponsive the next morning. He ingested the drug by heating the pills on foil and using a straw or other device to inhale the smoke.

- He "c[ould] at least do this much": he could "say, okay, you know, we're not gonna smoke like this," meaning not smoke in front of the child, "because you can't."

- He checked on the child throughout the night. He saw foils in the bedroom, but they were "bagged up and out of the way."

- Before he left the house to follow the paramedics to the hospital, he asked the friend to clean up "foils" and "trash."

- When asked why it took him so long to arrive at the hospital even though "you guys lived basically across the street," he admitted that "there was . . . smoking" on the way to the hospital.

Additionally, over Villalba's objection, the court allowed Astacio's counsel to ask a detective whether Astacio "had kinda made a rule that neither him nor [Villalba] was supposed to smoke fentanyl in

the same room as [the child]," to which the detective responded, "Yes, they had had that discussion and agreement." The court twice instructed the jury that Astacio's statements to the detective could only be used against Astacio and not Villalba.

¶ 9     The prosecution did not point to either parent as the source of the fentanyl that killed the child. Instead, its theory was that both parents were guilty of reckless child abuse because they had disregarded the risk of "surrounding [the child] [with] drugs and drug paraphernalia" and thereby placed him in a dangerous environment that led to his death. *See* §§ 18-6-401(1)(a), C.R.S. 2025 ("A person commits child abuse if such person . . . permits a child to be unreasonably placed in a situation that poses a threat of injury to the child's life . . . ."); 18-6-401(7)(a)(I) (a person is guilty of a class 2 felony if the person acts recklessly and the child abuse results in death). In defense, the parents generally argued that their addictions prevented an awareness of the risk the drugs and paraphernalia posed to the child, though each of them also contended that the other was more responsible for the child's death. The jury found both parents guilty of reckless child abuse resulting in death and Villalba guilty of two counts of drug possession.

## II. Severance

¶ 10    Villalba contends that the court erred by joining her and Astacio's cases for trial because the admission of Astacio's statements violated her Sixth Amendment confrontation rights or otherwise unfairly prejudiced her defense. We disagree.

### A. Severance Based on the Confrontation Clause

#### 1. Legal Principles and Standard of Review

¶ 11    Under Crim. P. 8 and Crim. P. 13, the court may order two or more cases to be joined for trial if the defendants are alleged to have participated in the same act or series of acts arising from the same criminal episode. *See People v. Black*, 2022 COA 127, ¶ 58. Joint trials are favored under these circumstances because they conserve resources, reduce the inconvenience or trauma to witnesses, and encourage consistent verdicts. *Samia v. United States*, 599 U.S. 635, 654 (2023).

¶ 12    But joint trials can raise constitutional concerns when evidence is admissible against one defendant, but not the other. *Bruton v. United States*, 391 U.S. 123, 135-36 (1968). The Confrontation Clause guarantees the right of a criminal defendant "to be confronted with the witnesses against him." U.S. Const.

5

amend. VI. Thus, the Clause generally prohibits the admission at trial of out-of-court "testimonial" statements — like a confession to police. *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004).

¶ 13     Still, the Confrontation Clause applies only to witnesses "against the accused." *Id.* at 50. And ordinarily, a codefendant whose out-of-court statements are introduced at a joint trial "is not considered to be a witness 'against' a defendant if the jury is instructed to consider [the statements] only against [the] codefendant." *Richardson v. Marsh*, 481 U.S. 200, 206 (1987).

¶ 14     But that principle has its limits. When a nontestifying codefendant's confession "facially incriminat[es]" the defendant, its admission at a joint trial violates the defendant's confrontation rights, even if the court gives a proper limiting instruction. *Samia*, 599 U.S. at 647 (quoting *Richardson*, 481 U.S. at 207); *accord Bruton*, 391 U.S. at 136-37. Under those circumstances, "the risk that the jury will not, or cannot, follow instructions" is constitutionally intolerable. *Bruton*, 391 U.S. at 135.

¶ 15     But to fall within *Bruton*'s "narrow exception" to the presumption that juries follow their instructions, *Richardson*, 481 U.S. at 207, the codefendant's statements must "directly implicate"

6

the defendant in the charged criminal conduct, *Samia*, 599 U.S. at 648; *see also Gray v. Maryland*, 523 U.S. 185, 194 (1998) (explaining that *Bruton* applies to statements that are "directly accusatory"). "[I]nferential incrimination" is insufficient. *Richardson*, 481 U.S. at 208.

¶ 16    We review de novo whether a court's ruling deprived the defendant of her Sixth Amendment confrontation rights. *People v. Ambrose*, 2021 COA 62, ¶ 65. If a constitutional violation occurred and the defendant preserved her claim of error, we will reverse unless the prosecution proves that the error was harmless beyond a reasonable doubt. *People v. Jones*, 2023 COA 104, ¶ 44.

## 2.    Analysis

¶ 17    Villalba contends that admission of the detective's testimony that Astacio "told [Villalba] not to smoke fentanyl in bed with [the child]" violated her confrontation rights. According to Villalba, the statement "directly incriminated" her by "invit[ing] the inference [that] she had previously smoked or would smoke fentanyl" around the child, "such that Astacio told her not to." For several reasons, we reject that argument.

7

¶ 18     First, the detective did not testify that Astacio told Villalba not to smoke fentanyl in bed with the child. The detective clarified that Astacio said he and Villalba had a "discussion," during which they "agree[d]" not to smoke drugs in the same room as the child.

¶ 19     Second, Astacio's statement about the parents' agreement did not directly inculpate Villalba in the crime of child abuse.[1] While the statement implied that Villalba used drugs, it did not "referenc[e] [her] smoking fentanyl around [the child]," as Villalba asserts.

¶ 20     To be facially incriminating, a nontestifying codefendant's statement must "obviously refer[] to [the defendant's] direct participation in the offense." *United States v. Benson*, 957 F.3d 218, 232 (4th Cir. 2020); *see also United States v. Mikhel*, 889 F.3d 1003, 1045 (9th Cir. 2018) (no *Bruton* violation where the

---

[1] In a footnote in her reply brief, Villalba says that the admission of Astacio's statements requires a new trial on the drug possession charges too. But she does not develop any argument that the statements were directly incriminating with respect to the drug charges. Even if they were, any error in admitting them was surely harmless. Astacio's statements were cumulative of overwhelming evidence that Villalba possessed fentanyl and cocaine. *See People v. McFee*, 2016 COA 97, ¶ 48 (Confrontation Clause violation is harmless beyond a reasonable doubt when the evidence is cumulative and the prosecution's evidence of guilt is overwhelming).

8

challenged statement did not "directly establish[] that [the defendant] committed or conspired to commit" the charged offense); *United States v. Lage*, 183 F.3d 374, 387 (5th Cir. 1999) (no *Bruton* violation where the challenged statement placed the defendant at the scene of the crime but was "utterly silent" as to whether he participated in it).

¶ 21    *Bruton* illustrates the point.  In that case, a law enforcement witness testified that the codefendant had "orally confessed to him that [the codefendant] and [the defendant] committed the armed robbery."  391 U.S. at 124.  The statements "expressly implicating" the defendant were so "powerfully incriminating" and "devastating to the defendant" that the Court concluded a limiting instruction would be ineffective.  *Id.* at 135-36; *see also Gray*, 523 U.S. at 188, 192 (codefendant's confession that he, the defendant, and a third person had "participated in the beating that resulted in [the victim's] death" "directly implicated" the defendant).

¶ 22    The out-of-state cases on which Villalba relies involve directly incriminating statements, so rather than advancing her position, the cases merely prove *Bruton*'s rule.  *See State v. Tucker*, 861 P.2d 24, 35-36 (Haw. Ct. App.) (in case involving child abuse resulting in

9

death, both defendants' confrontation rights were violated by the admission of their statements to police that the other had struck the child in the head), *cert. granted and case remanded*, 857 P.2d 600 (Haw. 1993); *State v. Ennis*, 158 P.3d 510, 521 (Or. Ct. App. 2007) (in felony murder case, the defendant's confrontation rights were violated by the admission of the codefendant's statement establishing the direct participation of "[s]omeone else" in the predicate offenses); *State v. Vasquez*, 311 P.3d 1115, 1119-20 (Ariz. Ct. App. 2013) (in murder case, the defendant's confrontation rights were violated where the court failed to give a limiting instruction and admitted the codefendant-brother's statement that the murder was "an accident," "[t]hey . . . involved [the defendant] in it," and that family members had "wanted [them] to turn themselves in").

¶ 23 The statement at issue here does not establish Villalba's guilt. Evidence that Villalba agreed not to smoke around the child was hardly "devastating" to her defense. To the contrary, as the trial court found, the evidence suggested that Villalba had *not* used fentanyl while in bed with the child. True, some jurors might have concluded from the statement that Villalba and Astacio were aware of the risk of exposing the child to drugs. But as Villalba's

argument acknowledges, that conclusion requires a logical inference. And even then, the statement does not establish guilt. The jury would have to link evidence of an awareness of a risk to other evidence to arrive at a finding that Villalba *disregarded* the risk and exposed the child to drugs. In other words, even if the statement established the requisite mens rea, it did not establish the actus reus, and, therefore, it was not directly incriminating. *See Gorman v. People*, 19 P.3d 662, 665 (Colo. 2000) (To subject a person to criminal liability, "there must be concurrence of the actus reus, an unlawful act, and the mens rea, a culpable mental state."); *Richardson*, 481 U.S. at 208 (when a confession is "not incriminating on its face, and bec[omes] so only when linked" with other evidence, a limiting instruction is sufficient to avoid a confrontation violation).

¶ 24     Third, the fact that the statement referred indirectly to Villalba's fentanyl use also did not facially incriminate her with respect to the child abuse charge. It was not Villalba's mere use of drugs that formed the basis of the prosecution's case; it was the child's proximity to the drugs and paraphernalia.

11

¶ 25    Villalba also contends that once the court allowed Astacio's counsel to elicit the testimony about the parents' agreement, which named Villalba directly, the jury "would have had no trouble identifying who Astacio was referring to" in some of his redacted interview statements.

¶ 26    As Villalba conceded at oral argument, she never raised the sufficiency of the redactions in the trial court, so this contention of error is unpreserved (or, arguably, waived). *See Forgette v. People*, 2023 CO 4, ¶ 21 (to preserve an issue for appeal, the party must lodge an objection "specific enough to draw the trial court's attention to the asserted error" (citation omitted)).

¶ 27    Regardless, the argument fails on the merits. The challenged statements do not implicate Villalba in the charged offense, even in light of the detective's later reference to her.

¶ 28    For example, Astacio's admission that he smoked fentanyl the night before the child died and his explanation of how he typically smoked fentanyl have nothing to do with Villalba. Nor was she implicated in Astacio's statement that he asked the friend to clean up the house.

¶ 29    The statements that Astacio saw foils in the bedroom ("bagged up and out of the way") and that "there was . . . smoking" on the way to the hospital might be prejudicial, but they did not facially inculpate her in the crime of child abuse.  The former statement is only inferentially incriminating because it depends on "linkage" to other evidence admitted at trial.  "Where the necessity of such linkage is involved, it is a less valid generalization that the jury will not likely obey the instruction to disregard the evidence."  *Richardson*, 481 U.S. at 208.  The latter statement did not establish that Villalba committed child abuse, only that she was likely addicted to fentanyl, a fact that was supported by overwhelming, uncontested evidence.

¶ 30    And even if the jury would have known that Astacio was talking about Villalba when he said, "[*W*]*e're* not gonna smoke like this" (emphasis added) — i.e., in front of the child — "because you can't," the statement is no more damaging than the similar statement admitted through the detective, which we have concluded was not facially incriminating.

¶ 31    Accordingly, we conclude that the admission of Astacio's interview statements at trial did not deprive Villalba of her

13

confrontation rights and, therefore, did not require severance of the parents' trials.

B.  Severance Under the Rules of Criminal Procedure or Statute

1.  Legal Principles and Standard of Review

¶ 32  Even when the Confrontation Clause is not implicated, a defendant may be entitled to sever her trial from that of her codefendant.  Under Crim. P. 14 and section 16-7-101, C.R.S. 2025, severance is mandatory when the prosecution or a codefendant seeks to introduce material prejudicial evidence admissible in a joint trial but not against the moving defendant in a separate trial.  *See People v. Maass*, 981 P.2d 177, 183 (Colo. App. 1998).  The evidence must be so "inherently prejudicial" that the jury would not be able to limit its use to its proper purpose despite an instruction.  *Peltz v. People*, 728 P.2d 1271, 1277 (Colo. 1986) (citation omitted).

¶ 33  If a defendant is not entitled to severance as a matter of right, the trial court may nonetheless exercise its discretion to sever codefendants' trials.  In determining whether the court should have granted a discretionary severance, we consider (1) whether the number of defendants or the complexity of evidence is such that the

14

jury will confuse the evidence and the law applicable to each defendant; (2) whether, despite admonitory instructions, evidence admissible against one defendant will improperly be considered against another; and (3) whether the defenses are antagonistic. *Black*, ¶ 60.

¶ 34     We review a trial court's decision to deny a severance motion for an abuse of discretion, *Peltz*, 728 P.2d at 1275, and will reverse for misjoinder only if a defendant demonstrates actual prejudice. *People v. Bondsteel*, 2015 COA 165, ¶ 33, *aff'd*, 2019 CO 26, *overruled on other grounds by*, *Garcia v. People*, 2022 CO 6, ¶ 36.

## 2.     Analysis

¶ 35     Villalba contends that she was entitled to a severance either as a matter of right or of discretion.

¶ 36     To support her argument for mandatory severance, Villalba essentially reasserts her Confrontation Clause arguments, contending that Astacio's statements implicated her in criminal or otherwise reprehensible conduct such that the jury was likely to use the evidence against her, even with a proper instruction.

¶ 37     Again, the only statements that arguably implicated Villalba were Astacio's admission that "there was . . . smoking" on the way

15

to the hospital and that he saw foils in the bedroom. As noted, these statements were not facially incriminating with respect to the child abuse charge. And in light of the other evidence of Villalba's addiction, we cannot say that these statements were otherwise so prejudicial that the jury would have used them for an improper purpose. *See People v. Pappadiakis*, 705 P.2d 983, 986 (Colo. App. 1985) (mandatory severance was not necessary where the challenged evidence did not "implicate[] or refer[] to [the] defendant, and the court . . . instructed the jury that the evidence was not to be considered against the defendant"), *aff'd sub nom.*, *Peltz*, 728 P.2d at 1273; *People v. Carillo*, 946 P.2d 544, 551 (Colo. App. 1997) (mandatory severance not necessary where challenged testimony "did not refer to the defendant or mention his name"), *aff'd on other grounds*, 974 P.2d 478 (Colo. 1999).

¶ 38    In the alternative, Villalba argues that the court erred by declining to grant a discretionary severance. We disagree for a few reasons.

¶ 39    First, contrary to Villalba's argument, the case was not "complex." For one thing, there were only two defendants, and the evidence was not particularly complicated. *See People v. Johnson,*

30 P.3d 718, 726 (Colo. 2000) (upholding denial of severance in similar circumstances). And while some evidence was admissible only against one of the defendants, most of the evidence supporting the prosecution's theory of the case — that both Villalba and Astacio had recklessly surrounded their son with drugs and drug paraphernalia — was admissible against both defendants. *Cf. People v. Adams*, 678 P.2d 572, 574 (Colo. App. 1984) ("Mutual participation of defendants in an offense is considered a logical basis for refusing to sever.").

¶ 40 Second, as we have concluded, any prejudice from evidence admissible against one of the defendants but not the other was mitigated by the court's limiting instructions, and nothing in the record suggests that we should abandon the presumption that the jury followed those instructions. *See Peltz*, 728 P.2d at 1277.

¶ 41 Third, we disagree with Villalba that her defense was antagonistic to Astacio's. Antagonistic defenses are "mutually exclusive" or "irreconcilable," meaning "the acceptance of one defense would tend to preclude the acquittal of the other defendant." *People v. Gutierrez*, 2021 COA 110, ¶ 11 (citation omitted). And while it is true that both Villalba and Astacio argued

17

that the other was more responsible for the child's death, the jury could feasibly have acquitted *both* defendants of reckless child abuse if it had accepted the argument that their addiction precluded them from disregarding a known risk to the child. Thus, the defenses did not rise to the level of antagonism necessary to require severance. *Id.*

¶ 42 In sum, we conclude that the court did not abuse its discretion by denying the motion to sever.

### III. Detective's Testimony Concerning Vape Pens

¶ 43 Villalba also contends that the trial court reversibly erred by admitting speculative testimony that a vape pen could be used to smoke fentanyl.

¶ 44 During cross-examination of the lead detective, Astacio's counsel asked if a person could "smoke drugs, illegal narcotics," including "schedule 2 controlled substances," "as well as . . . nicotine" with a vape pen. Villalba's counsel did not object. The detective responded that she "assume[d] . . . [that] if you are able to fill your own vape pen, that you can put whatever you'd like in it."

¶ 45 The jury submitted multiple questions for the detective. Question 15 had four subparts. And Question 16(b) asked, "In your

18

time serving as law enforcement, have you ever come across a vape pen modified for fentanyl use or have [you] heard of this type of modification being possible?"

¶ 46    During a bench conference, the parties discussed the submitted questions, after which the court asked both defendants' lawyers, "So what are we objecting to?"  In response, Astacio's counsel objected to Question 15, subpart two, concerning whether drug residue on a mattress could be "breath[ed] into the body."  Villalba's counsel then objected to Question 15, subpart one, "on the same grounds as No. 2."

¶ 47    When the court agreed to "sustain the objection to 1 and 2 on Question No. 15," Villalba's counsel responded, "Yeah, okay" and "I'm fine with that."  He did not object to any other question, including Question 16(b).

¶ 48    In response to Question 16(b), the detective testified,

> I've heard that fentanyl can be in anything at
> this point.  The vape pens that I have seen
> have been . . . changed to not look like a vape
> pen.  So I assume that vape pens can come in
> all sorts of shapes, sizes, and anything could
> be in them.

Villalba's counsel did not object to this testimony.

19

¶ 49    Villalba now argues that the court erred by allowing the detective to give "speculative" expert testimony in the guise of lay opinion testimony.

¶ 50    We conclude that Villalba waived any claim of error concerning Question 16(b). Waiver is "the intentional relinquishment of a known right or privilege." *People v. Rediger*, 2018 CO 32, ¶ 39 (citation omitted). A waiver may be explicit, as when a defendant "expressly abandons an existing right or privilege," or it may be implied, as when a defendant "engages in conduct that manifests an intent to relinquish a right or privilege or acts inconsistently with its assertion." *Forgette*, ¶ 28. A waived claim of error presents nothing for an appellate court to review. *People v. Kessler*, 2018 COA 60, ¶ 38.

¶ 51    Although a mere failure to object does not in all cases constitute a waiver, *Rediger*, ¶ 44, agreeing to a proposed course of action with full knowledge of the surrounding facts and circumstances does, *Forgette*, ¶ 34 (The defendant "intentionally relinquished his known right to object to [a] sleeping juror and therefore waived any such objection for appellate review" because

his "counsel was fully aware of the sleeping juror but did not object or ask the court to take any action to address the issue.").

¶ 52 Villalba's counsel reviewed each juror question and had an opportunity to object to any of the questions, but he objected only to parts of Question 15. That he did not object to Question 16(b) is not surprising, as he had not objected to an earlier question about the possible use of vape pens. By failing to object, he implicitly agreed that the court could ask Question 16(b). Therefore, this claim of error is waived. *See People v. Tee*, 2018 COA 84, ¶¶ 19-26 (concluding that by acquiescing in the court's remedial actions, the defendant waived any claim of error concerning juror pre-deliberations); *Kessler*, ¶ 36 (defense counsel's express agreement that Breathalyzer results were admissible constituted a waiver of right to argue the opposite on appeal).

¶ 53 And because the detective's unreviewable response to the juror question was cumulative of her earlier testimony about vape pens, any error in admitting the response was not plain. *Cf. People v. Douglas*, 2015 COA 155, ¶ 41 (no plain error where improperly admitted testimony is cumulative of properly admitted evidence).

## IV. Cumulative Error

¶ 54 We reject Villalba's argument that she is entitled to a new trial based on cumulative error. "For reversal to occur based on cumulative error, a reviewing court must identify multiple errors that collectively prejudice[d] the [defendant's] substantial rights . . . ." *Howard-Walker v. People*, 2019 CO 69, ¶ 25. Because we have found no errors, the cumulative error doctrine does not apply. *See People v. Krueger*, 2012 COA 80, ¶ 78.

## V. Disposition

¶ 55 The judgment of conviction is affirmed.

JUDGE DUNN and JUDGE MOULTRIE concur.