The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

**John H. DOBSON, Defendant–Appellant.**

No. 91CA1119.

Colorado Court of Appeals, Div. IV.

Aug. 13, 1992.

Rehearing Denied Oct. 8, 1992.

Certiorari Denied Feb. 22, 1993.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Clement P. Engle, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, Joan E. Mounteer, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge PLANK.

Defendant, John Henry Dobson, appeals the judgment of conviction entered upon jury verdicts finding him guilty of two counts of willful destruction of wildlife, one count of criminal mischief, four counts of waste of edible game, five counts of illegal possession of wildlife, and one count of hunting without a valid license. We affirm.

The prosecution's evidence showed that the defendant, while hunting alone, shot and killed five elk. The defendant is a nonresident and was hunting without an elk hunting license. The animals were described as follows: first spike bull elk, five point bull elk, elk cow, elk calf, and second spike bull elk with forked horn. Another hunter who was aware of the defendant's actions reported defendant to the Division of Wildlife. The defendant's arrest and prosecution followed.

## I.

■ Defendant first contends that the trial court erred in its response to the jury's request for a definition of the word "abandon" as found in the willful destruction of wildlife statute, § 33–6–117, C.R.S. (1984 Repl.Vol. 14). We disagree.

During deliberations, the jury asked the trial court for a legal definition of the word "abandon." After finding no case law defining abandon under § 33–6–117, the trial court proposed an answer to the jury's question to counsel. Both the prosecutor and defense counsel had "no objection or suggestions." The court then gave the following answer to the jury: "There is no legal definition of 'abandon' which applies to this case. You should apply the normal or everyday meaning of this word."

Defendant now argues that the word "abandon" has a special legal meaning and the court had a duty to define the term in its "legal" capacity. Defendant acknowledges that the plain error standard of review applies because no contemporaneous objection was made to the trial court's response to the jury. Thus, reversal is required only if the court's answer contains a misstatement of the law. *See Valley v. People*, 165 Colo. 555, 441 P.2d 14 (1968).

■ A court's primary task in construing a statute is to ascertain and give effect to legislative intent. A statute should be given that construction which will permit, if at all feasible, the accomplishment of the statutory objective in proscribing certain conduct as criminal.

■ To ascertain legislative intent, we look first to the language of the statute itself with a view toward giving the statutory language its commonly accepted and understood meaning. *People v. Schuett*, 833 P.2d 44 (Colo.1992).

Section 33–6–117(1), C.R.S. (1984 Repl. Vol. 14) provides:

Except as is otherwise provided in articles 1 to 6 of this title or by rule or

regulation of the commission, it is unlawful for any person to take or to solicit another person to take any wildlife and detach or remove, with the intent to abandon the carcass or body, only the head, hide, claws, teeth, antlers, horns, internal organs, or feathers or any or all of such parts or to kill and abandon any wildlife.

The defendant argues that the "lay" definition of "abandon" has a different meaning than the legal definition.

*Webster's Third New International Dictionary* 2 (1971) defines "abandon" as: "1: to cease to assert or exercise an interest, right, or title to esp. with the intent of never again resuming or reasserting it: yield, relinquish," or "3: to forsake or desert esp. in spite of an allegiance, duty, or responsibility." Relying on *American Heritage Dictionary* 2 (1975), a more abbreviated lay definition is quoted by the defendant: "1. to forsake; desert. 2. to surrender one's claim or right to; give up."

*Black's Law Dictionary* 2 (5th ed. 1979) defines abandon in the following manner:

To desert, surrender, forsake, or cede. To relinquish or give up with intent of never again resuming one's right or interest. To give up or to cease to use. To give up absolutely; to forsake entirely; to renounce utterly; to relinquish all connection with or concern in; to desert. It includes the intention, and also the external act by which it is carried into effect.

We find the same concepts present in both legal and lay definitions of abandon. Additionally, we find no misstatement of the law in the trial court's response to the jury. The trial court's decision to refer the jury to the "common," "normal," "everyday" meaning of the statutory term is within the meaning of the statutory language. *See Kwiatkoski v. People,* 706 P.2d 407 (Colo.1985). The trial court's response to the jury was proper; hence, no error occurred, plain or otherwise.

## II.

Defendant next contends that there was insufficient evidence to support the conviction of willful destruction of wildlife and criminal mischief. We disagree.

■ When the sufficiency of the evidence is challenged, a reviewing court must determine whether the evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable person that defendant is guilty beyond a reasonable doubt. *Taylor v. People,* 723 P.2d 131 (Colo.1986).

### A.

■ Defendant claims that there was insufficient evidence to show that he abandoned the cow and calf elk and violated § 33–6–117(1). This contention is without merit.

Defendant argues that he gave both elk to another hunter and the evidence does not establish that he abandoned the animals. Further, defendant contends that he could not have abandoned the animals because, when arrested, he had not broken up his campsite and he remained in the state.

■ There is no requirement that the defendant had to "break camp" or "leave Colorado" in order to "abandon" the animals. *See* § 33–6–117(1). Abandonment can be inferred from the intent and conduct of the actor.

Here, there was evidence that the defendant had made no attempt to field dress the animals. The animals were found tangled in the brush where they had been shot hours earlier.

Defendant testified that he gave the animals away to another hunter. However, the hunter testified that he did not agree to take the elk because he recognized that they had been illegally acquired.

Under this state of the record, there was sufficient evidence for the jury to conclude that the defendant intended to abandon the animals.

### B.

■ Defendant argues that there was insufficient evidence to support a conclu-

sion that the value of the five elk, in the aggregate, exceeded $300. Again, there is no merit to defendant's claim.

An officer from the Division of Wildlife testified, over defendant's objection, to the market value of domestic elk and noted that he had recently approved the sale of one salvaged domestic elk calf for $3,500. He testified further that the value of domestic elk cows ranged between $6,000 and $10,000 and that of elk bulls ranged between $8,000 and $15,000. The trial court allowed the evidence, finding the value of domestic elk was relevant and determined that the jury could weigh the relative value of wild and domestic elk.

Defendant contends that the value of domestic·elk is not relevant to the value of wild elk. He claims that the price for domestic elk is higher because of the increased costs of rearing and maintaining elk on a farm; as well, he correctly notes that there was no evidence showing the existence of a market for wild elk. Accordingly, he argues that this evidence was irrelevant and, therefore, inadmissible. Defendant contends further that since no relevant or admissible evidence was presented to the jury, it could not determine the value of wild elk.

Under § 18-4-501, C.R.S. (1986 Repl.Vol. 8B), a person commits criminal mischief if he or she knowingly damages "the ... personal property of one or more persons in the course of a single criminal episode" and "the aggregate damage to the ... personal property is three hundred dollars or more but less than ten thousand dollars."

■■■ Actual value will generally be determined by market value, that is, the price a willing buyer would pay for the object in the open market. *People v. Marques,* 184 Colo. 262, 520 P.2d 113 (1974). If, however, there is no market for the particular item, then such factors as the original purchase price, replacement cost, the general use and purpose of the article, and salvage value may be considered as some evidence of value. *People v. Dunoyair,* 660 P.2d 890 (Colo.1983).

There was evidence that the principal reason hunters kill elk was to have the meat to eat. Evidence was presented that the cost of a non-resident elk hunting license is $210. The purchase of the licenses for the hunting of a single animal could reasonably lead the jury to find intrinsic value in the elk.

Additionally, evidence was introduced that horsemen were charging hunters one hundred dollars to haul one acquired elk out of the woods. Thus, if the defendant had properly removed all the elk he killed, he would have spent five hundred dollars in addition to the general hunting expenses plus the cost of a hunting license if he had obtained one.

We conclude sufficient evidence was offered to allow the jury to find that the aggregate value of the five elk here exceeded three hundred dollars.

### III.

Defendant next contends that the trial court erred in admitting a photograph of severed elk heads because it was irrelevant and prejudicial. Again, we disagree.

### A.

■■■ Defendant argues that the photograph was irrelevant because the decapitated heads of the five elk did not accurately depict the elk as he had left them. He further contends that, because no evidence was offered as to who had removed the heads or when the heads were removed, the jury was left with the impression that he had mutilated the animals.

■■■ The admission into evidence of a photograph is a matter within the discretion of the trial court. *People v. White,* 199 Colo. 82, 606 P.2d 847 (1980). The trial court's ruling will not be reversed unless an abuse of discretion is shown. *People v. Viduya,* 703 P.2d 1281 (Colo.1985).

■■■ Photographs are relevant and admissible to show any matter which a witness could describe in words. *See People v. White, supra.* Photographs can be introduced for the purpose of identification. *People v. Loscutoff,* 661 P.2d 274 (Colo. 1983).

Here, the admission of the photograph was for the purpose of identifying the five elk which were shot by the defendant. The prosecution did not argue that defendant had removed the heads of the animals and evidence was offered to indicate that the defendant did not field dress four of the five elk. We find no abuse of discretion by the trial court in admitting the photograph.

### B.

In the alternative, defendant argues that even if the photograph was relevant, its probative value was substantially outweighed by the danger of unfair prejudice. Defendant maintains that the "gruesome" photograph of freshly severed elk heads had a potentially inflammatory effect which far outweighed any probative value. Defendant further maintains that the photograph should not have been admitted because he offered to stipulate to the offered evidence.

Photographs are not inadmissible solely because defendant has stipulated to these matters, or because these matters have been established through testimony of prosecution witnesses. *See People v. White, supra.*

In review of the evidence, we do not find the photograph was "gruesome." The photograph depicts the elk heads in a manner not unlike that of an elk head mounted by a taxidermist and hung on a wall. Thus, we find no error in the admission of the photograph.

### IV.

Defendant finally asserts that reversal is required by the cumulative effect of error. However, the cumulative error doctrine is inapplicable here since we found no error that substantially prejudice the defendant's right to a fair trial. *See People v. Roy,* 723 P.2d 1345 (Colo.1986).

Accordingly, the judgment is affirmed.

TURSI and METZGER, JJ., concur.