**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**James C. MAASS, Defendant–Appellant.**

**No. 96CA1070.**

Colorado Court of Appeals,
Div. V.

Nov. 13, 1998.

Rehearing Denied Dec. 10, 1998.

Certiorari Denied July 26, 1999.*

---

* Justice SCOTT does not participate.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Robert M. Petrusak, Senior Assistant Attorney General, Laurie A. Booras, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee

David F. Vela, Colorado State Public Defender, Martin Gerra, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant

Opinion by Judge BRIGGS.

Defendant, James C. Maass, appeals the judgment of conviction entered on jury verdicts finding him guilty of first degree murder after deliberation, first degree felony murder during a kidnapping, conspiracy to commit first degree murder after deliberation, conspiracy to commit first degree felony murder, and second degree kidnapping. We affirm the convictions for first degree murder after deliberation, conspiracy to commit first degree murder after deliberation, and second degree kidnapping. We vacate the convictions for first degree felony murder and conspiracy to commit felony murder and

remand the cause for correction of the mittimus.

Defendant and another man were involved in the consumption and sale of drugs. At trial, defendant's girlfriend testified that defendant and the other man learned that a woman they knew had become a police informant. A meeting was arranged with the woman at defendant's apartment. When she arrived, she was confronted by defendant, his girlfriend, and another drug user.

To learn what information the woman had disclosed, defendant threatened, among other things, to cut off her fingers with a knife. She related the information she said had been provided to the police.

Everyone present then shared drugs. Later, the other man arrived with more drugs. After a brief conversation with defendant, he gave the woman a syringe of drugs, which she injected. He said that she was "going to be with her kid, that she was going to have to work hard favors for these people [on whom she had informed]."

The woman left in a car with defendant. Her body was found a short time later. She had been shot multiple times in the head.

Defendant and the codefendant were arrested, charged, and scheduled for trial together. Both filed various motions to sever their trials. They asserted, among other things, that the jury would have difficulty in separating the evidence and law applicable to each, that prejudicial evidence would be admissible against one and not the other, and that their defenses were antagonistic. The trial court denied the motions.

Defendant then requested that he and the codefendant each be granted the same number of peremptory challenges as the prosecutor. The trial court denied the motion. However, it granted one additional peremptory challenge and gave eight to each, so that their total was equal to the prosecutor's statutory allotment of sixteen.

After the jury was selected, but before any evidence was presented, the codefendant again moved for severance. The basis asserted this time was the need for a continuance. The codefendant desired to impeach

defendant with a recent conviction in federal court, but the conviction would not be final until sentencing.

At this point, the trial court granted the motion. This left only defendant to be tried.

Defendant immediately requested a short continuance so that counsel could "switch gears" and also moved for mistrial so that a new jury could be selected. The court granted a one-day continuance but refused to declare a mistrial. The case proceeded to trial with the jury that had been selected, and it found defendant guilty on all charges.

## I.

■ Defendant first contends that the trial court, having granted the codefendant's motion to sever trials after the jury had been selected, erred in rejecting his motion for mistrial so that he could select a new jury. He claims that the court thereby violated his statutory right to exercise peremptory challenges and his constitutional right to due process. His argument is that, as the sole remaining defendant, he was entitled to select a jury with the same number of peremptory challenges as the prosecutor, and without the involvement of a codefendant who had an antagonistic theory of defense. Defendant further argues that the need to select a new jury was even greater here because the codefendant had used a peremptory challenge to dismiss a potential juror defendant had wanted on the jury. We find no error.

## A.

In *People v. Gardenhire*, 903 P.2d 1165 (Colo.App.1995), a division of this court addressed a due process challenge to § 16–10–104(1), C.R.S.1998. The statute provides, among other things, that in a capital case involving codefendants, the exercise of peremptory challenges is to be made and considered as the joint peremptory challenge of all defendants.

The defendant in *Gardenhire* asserted that § 16–10–104(1) violated his constitutional right to due process because both the prosecutor and the codefendant had been able to exercise peremptory challenges against defendant's interest, thereby limiting his ability to select a jury consistent with his defense. He argued that the court's refusal to grant him the same number of peremptory challenges as the prosecutor directly impacted his right to a fair and impartial jury.

In rejecting the constitutional challenge, the division in *Gardenhire* recognized that the strategies and theories of one codefendant may detract from those of another. It nevertheless concluded, consistent with most other courts that have addressed the issue, that requiring codefendants to share peremptory challenges comports with fundamental fairness in light of the exigencies of a joint trial. *See also United States v. Phillips*, 874 F.2d 123 (3d Cir.1989)(holding that in cases with multiple defendants, a codefendant must use peremptory challenges in conjunction with other defendants, even if it means losing a favorable juror or using a challenge differently than it would have been used in a separate trial). We are not persuaded to reach a contrary conclusion.

## B.

Defendant seeks to distinguish *Gardenhire* because the trial court there had properly denied a motion for severance, and the trial proceeded to conclusion with both defendants. In contrast, the trial court here did eventually grant the codefendant's request for separate trials, but only after the jury had been selected. He argues that, as a sole defendant, he should have been allowed to select a new jury.

The issue presented is one of first impression in Colorado. However, it has been addressed by other courts.

In *United States v. Amer*, 824 F.2d 906 (11th Cir.1987), the trial court rejected the pre-trial requests by the defendant and his two codefendants for separate trials. One of the codefendants then agreed to enter a guilty plea. The trial proceeded against the defendant and the remaining codefendant.

After the jury was selected, the government announced it would call the former codefendant to testify against the other two. Counsel for the remaining codefendant re-

newed his motion to sever on the grounds that his cross-examination would reveal incriminating information about a prior conviction involving the witness and the defendant. The government joined in the motion.

The trial court in *Amer* granted the motion. However, it then refused the sole remaining defendant's motion for a mistrial. The Eleventh Circuit affirmed:

> At the time [the] jury was chosen, there *were* two codefendants. Unless it was improper for the two codefendants to have been jointly tried in the first place, there was no violation of the rule [governing peremptory challenges]. For example, if two codefendants are tried, and mid-trial one pleads guilty, the other codefendant would not be entitled to a new jury chosen exclusively by him.
>
> . . . .
>
> The remaining question, therefore, is whether the trial judge erred in not granting a severance prior to jury selection. The issue is not, as petitioner would have us believe, whether the trial judge ultimately granted a severance based on the same grounds that were presented in support of the prior motion to sever; rather, the inquiry is concerned with whether a severance was mandated at an earlier point.

*United States v. Amer, supra,* 824 F.2d at 907–908 (emphasis in original).

■ We agree that, when a trial court does not initially err in denying a motion to sever, its later decision, after the jury has been selected, to grant a codefendant's motion does not necessarily require that the court also grant the remaining defendant's motion for a mistrial. If the jury was fairly selected in accordance with the applicable law, and if no facts are presented that show the jury as finally selected was other than representative and impartial to the remaining defendant, the trial may proceed to its conclusion. *See United States v. Amer, supra*; *see also United States v. Sandoval,* 847 F.2d 179 (5th Cir.1988); *United States v. Marcy,* 814 F.Supp. 673 (N.D.Ill.1992); *cf. Williams v. State,* 939 S.W.2d 703 (Tex.App.

1997); *but see Goode v. State,* 740 S.W.2d 453 (Tex.Crim.App.1987).

We must therefore initially determine whether the trial court erred in denying the motions for severance made before the jury was selected. If not, then the trial court violated neither defendant's statutory right to exercise peremptory challenges nor his constitutional right to due process.

### C.

The right to severance is determined under Crim. P. 14 and § 16–7–101, C.R.S.1998. Crim. P. 14 provides as follows:

> If it appears that a defendant or the prosecution is prejudiced by a joinder of offenses or of defendants in any indictment or information, or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants, or provide whatever other relief justice requires. However, upon motion any defendant shall be granted a separate trial as of right if the court finds that the prosecution probably will present against a joint defendant evidence, other than reputation or character testimony, which would not be admissible in a separate trial of the moving defendant, and that such evidence is prejudicial against those to whom it is not admissible.

Section 16–7–101 is similar but not identical. It states:

> When two or more defendants are jointly indicted or informed against for any offense and there is material evidence, not relating to reputation, which is admissible against one or some of them but which is not admissible against all of them if they are tried separately and which is prejudicial to those against whom it is not admissible, those against whom such evidence is admissible shall be tried separately upon motion of any of those against whom the evidence is not admissible. In all other cases, defendants jointly prosecuted shall be tried separately or jointly in the discretion of the court.

Defendant asserts that severance was mandatory because evidence admissible in a joint trial was prejudicial to him but was not

admissible if he were tried separately. He further asserts that, even if severance was not mandatory, the trial court abused its discretion in refusing to sever the trials because the defenses of the two defendants were antagonistic. We disagree with both contentions.

### 1. Mandatory Severance: Crim. P. 14

■ Defendant first asserts that severance was mandatory under Crim. P. 14. The argument ignores an important limitation contained in the rule. Unlike the statute, the rule requires mandatory severance only for evidence that "the prosecution will probably present."

Here, the trial court issued two orders before trial that included an analysis of the evidence defendant asserts required mandatory severance. The court acknowledged that some evidence would be admissible in a joint trial that was prejudicial to defendant and inadmissible in a separate trial against him. However, it concluded that the need for severance depended on whether the prosecution intended to introduce the evidence. The prosecutor filed a response agreeing not to introduce any statements by either defendant that would be inadmissible in a separate trial.

In these circumstances, we find no error in the trial court's determination that severance was not required, at least not under Crim. P. 14.

### 2. Mandatory Severance: § 16-7-101

■ Defendant asserts that, even if severance was not mandatory under Crim. P. 14, it was mandatory under § 16-7-101. The statute, unlike the rule, applies not just to evidence the prosecutor seeks to introduce, but also to evidence a codefendant seeks to introduce.

The trial court apparently failed to note this difference between the rule and the statute. Nevertheless, defendant's argument overlooks a separate limitation on mandatory severance contained in § 16-7-101. The statute requires mandatory severance only when evidence admissible in a joint trial but not in a separate trial against a defendant is both "prejudicial" *and* "material."

Here, the various motions for severance focused on a variety of evidence defendants claimed was prejudicial. This included physical evidence found in the codefendant's home; post-arrest statements by the codefendant; post-arrest statements by defendant to a fellow inmate; post-arrest statements made by defendant to his girlfriend; taped conversations between defendant and an undercover police agent; and post-arrest statements by defendant to police, apparently concerning drug involvement, that the trial court ruled the prosecutor could not admit because of *Miranda* violations.

In finding some of the evidence "prejudicial," the trial court was using the term in its common and traditional sense. *See Zafiro v. United States*, 506 U.S. 534, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993)(evidence that is probative of a defendant's guilt but technically admissible only against a codefendant may present a risk of prejudice; conversely, a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial). However, that is not the approach our supreme court has adopted in construing § 16-7-101.

In *Peltz v. People*, 728 P.2d 1271 (Colo. 1986), the codefendants sought separate trials. A reason asserted by one defendant was that the codefendant was seeking to impeach the prosecution's main witness by inquiring into an arson conviction involving both the witness and the defendant. The questioning was intended to show that the two had been "partners in crime."

The supreme court in *Peltz* first noted that, because the codefendant rather than the prosecutor had sought to introduce the evidence, the defendant was not entitled to severance as a matter of right under Crim. P. 14. It then concluded that, even though severance could be required under § 16-7-101 for evidence a codefendant sought to introduce, severance was still not required:

> Section 16-7-101 ... provides that joint defendants shall be tried separately when 'there is *material* evidence, not relating to reputation, which is admissible against one

or some of them but which is not admissible against all of them if they are tried separately and which is *prejudicial* to those against whom it is not admissible. . . .' We interpret section 16–7–101 to mean, in the mandatory severance setting, that the trial court must exercise its discretion and determine 'whether the admitted evidence was so inherently prejudicial that the jury could not have limited its use to its proper purpose.'

*Peltz v. People, supra,* 728 P.2d at 1277 (emphasis in original).

The trial court in *Peltz* had given the jury a limiting instruction. The supreme court, noting that there is a strong presumption that the jury followed the instruction, concluded that it could not say the trial court "abused its discretion" in finding that the jury would heed the limiting instruction.

■ Thus, severance may be "mandatory" in the circumstances described in § 16–7–101. Nevertheless, pursuant to *Peltz,* a trial court has discretion to determine whether the evidence is so inherently prejudicial that a jury could not be expected to follow a proper limiting instruction. *See also People v. Carrillo,* 946 P.2d 544 (Colo.App.1997)(*cert. granted* Nov. 24, 1997); *People v. Montoya,* 942 P.2d 1287 (Colo.App.1996).

In *Peltz,* the supreme court did not indicate what kind of evidence would require severance under its interpretation of § 16–7–101. In this case, it suffices to say that, aside from failing to direct us to that portion of the record containing the statements in question, defendant has not argued that the statements were so inherently prejudicial that the jury could not have been expected to limit their use to proper purposes. Nor was the evidence of defendant's prior federal conviction any more prejudicial than the evidence of the prior conviction in *Peltz.*

We therefore cannot say that the trial court erred in concluding that defendant was not entitled to severance as a matter of right under § 16–7–101. *See Peltz v. People, supra.*

## D. Discretionary Severance

■ Finally, defendant asserts in the alternative that, because the defenses he and the codefendant asserted were antagonistic, the trial court abused its discretion in not severing the trials before the jury was selected. Once again, we are not persuaded.

■ In exercising its discretion, the trial court is to consider, among other things, whether the defenses asserted by the codefendants are antagonistic. *People v. Lesney,* 855 P.2d 1364 (Colo.1993).

Neither Crim. P. 14 nor § 16–7–101 refers to antagonistic defenses as a basis for severing trials. Rather, it is a judicially recognized consideration, and there is no universal agreement on the nature and amount of antagonism sufficient to require separate trials. *See generally* W. Habeeb, Annotation, *Antagonistic Defenses As Grounds For Separate Trials of Codefendants In Criminal Case,* 82 A.L.R.3d 245 (1978).

The supreme court in *Peltz v. People, supra,* concluded that the theories of defense were not sufficiently antagonistic to require separate trials when one codefendant did not base her assertion of innocence on the guilt of the other. In doing so, it relied in part on *United States v. McClure,* 734 F.2d 484 (10th Cir.1984).

In *McClure,* the Tenth Circuit reaffirmed that a mere attempt by one codefendant to cast blame on the other is not in itself a sufficient reason to require separate trials. It likewise determined that severance is not required simply because separate trials might have offered a better chance for acquittal to one or more of the accused. *See also People v. Anaya,* 545 P.2d 1053 (Colo. App.1975)(not selected for official publication).

On the other hand, the Tenth Circuit in *McClure* recognized that a showing of "irreconcilable differences" may require severance. In its view, such a showing would require that the acceptance of one defense would tend to preclude the acquittal of the other defendant. Conversely, such a showing would also seemingly require that the guilt of one defendant would tend to establish the innocence of the other.

We need not determine the precise point at which the nature and extent of antagonism between defenses is such that a trial court may abuse its discretion in refusing severance. Here, defendant's theory of defense was that the victim was murdered by two men whom he had seen when he let the victim out of his car. His theory and the evidence he sought to introduce did not suggest that the codefendant was the murderer.

The codefendant's defense was simply that he was innocent. While some evidence was to be introduced indicating that defendant may have committed the murder, the jury was not required to find defendant guilty in order to find the codefendant was not involved.

In these circumstances, we cannot say the defenses were so antagonistic that the trial court abused its discretion in refusing to grant separate trials before the jury was selected. *See also People v. Escano,* 843 P.2d 111 (Colo.App.1992); *People v. Wandel,* 713 P.2d 398 (Colo.App.1985); *see generally* W. Habeeb, Annotation, *supra.*

In sum, the trial court did not err in refusing to grant severance before the jury was selected. We therefore find no violation of defendant's statutory right to exercise peremptory challenges or his constitutional right to due process in the trial court's further refusal to grant a mistrial so that defendant could select a new jury. In light of our conclusion, it is unnecessary for us to address whether a new trial is necessarily required when a trial court errs in denying a motion for separate trials before the jury is selected but grants such a motion after the jury's selection.

## II.

■ Defendant next asserts the evidence was insufficient to support a conviction under the kidnapping statute. The essence of the argument is that § 18-3-302, C.R.S.1998, requires proof that the victim was "seized" and taken "without her consent." Hence, he asserts, because the evidence established no more than that the victim was tricked into accompanying him to the murder scene, the conviction cannot stand. We are not persuaded.

### A.

■ The first question the argument presents is whether a victim who is taken by deceit has been "seized" for purposes of a charge of second degree kidnapping. We answer the question in the affirmative.

Pursuant to § 18-3-302, any person who knowingly seizes and carries another person from one place to another, without consent and without lawful justification, commits second degree kidnapping. This current version of the statute was enacted in response to the supreme court's decision in *People v. Powell,* 716 P.2d 1096 (Colo.1986), finding an earlier version unconstitutional.

The earlier version of the statute included an additional provision stating that the defendant must have seized the victim, "knowingly, forcibly, or otherwise." The court in *Powell* reasoned that, by using the terms "knowingly, forcibly, or otherwise" in the alternative, the statute could be construed to include within its coverage acts that were accomplished by "force" or "otherwise" but not "knowingly," thus eliminating the constitutionally required mental state.

Of importance here, the supreme court nevertheless further concluded that the statute could be upheld by excising the words "forcibly, or otherwise":

> [T]here is neither a constitutional requirement that 'forcibly' be an element of the crime nor any indication of legislative intent that 'forcibly' must be an element of second degree kidnapping.

*People v. Powell, supra,* 716 P.2d at 1102. The General Assembly then amended § 18-3-302 to delete the words, "forcibly, or otherwise," leaving the remainder of the statute intact.

More recently, a division of this court, in *People v. Metcalf,* 926 P.2d 133 (Colo.App. 1996), rejected the argument that the word "seize" in the present statute requires proof of physical force or express threats. It concluded that the word "seize" encompasses a mere taking.

In light of the reasoning in *Powell,* we agree with the conclusion in *Metcalf.* Thus, we further conclude that the evidence here was sufficient to establish that defendant "seized" the victim, within the meaning of the statute.

### B.

■■■ The question remaining is whether a victim can be said to have "consented" to being taken, for purposes of § 18-3-302(1), when the "consent" is obtained by deceit. We answer the question in the negative.

■■■ The rule of lenity requires that, in construing statutes, we must ordinarily resolve "ambiguities in a penal code in the defendant's favor." *People v. Lowe,* 660 P.2d 1261, 1267 (Colo.1983). However, a statute should be read to give consistent, harmonious, and sensible effect to all of its parts. *Lambdin v. District Court of Arapahoe County,* 903 P.2d 1126 (Colo.1995). Further, a court must assume a statute is to produce just and reasonable results. *Weld County School District RE-12 v. Bymer,* 955 P.2d 550 (Colo.1998); *see also* § 2-4-201, C.R.S. 1998. Thus, when faced with an ambiguity, even in a criminal statute, a court will not follow an interpretation of a statute that leads to absurd results. *People v. Moore,* 877 P.2d 840 (Colo.1994).

Here, to exclude defendant's conduct from the scope of § 18-3-302(1) would effectively immunize from any criminal liability the reprehensible conduct of obtaining control over a person and taking that person from one place to another by using deceit – conduct that has traditionally and universally constituted a crime. *See generally* B. Finberg, Annotation, *Kidnapping by Fraud or False Pretenses,* 95 A.L.R.2d 450 (1964). We cannot assume the General Assembly intended such a result.

Our conclusion is buttressed by the fact that the General Assembly has included seizure by deceit within the scope of § 18-3-301, C.R.S.1998, which defines first degree kidnapping. The differences in first and second degree kidnapping rest on factors other than deceit, such as the intent to force the victim or any other person to make any concession or give up anything of value in order to secure the release of the person under the offender's control. We perceive no rational basis for including seizure by deceit in first degree, but not second degree, kidnapping.

We also note that a person who is seized by the use of force or express threats by definition has not given consent. Conversely, an adult who consents *without* deceit to travel with another has not been "seized." Thus, our construction of the statute gives meaning to both the terms "seizure" and "without consent."

Nor are we required to reach a contrary conclusion because a different subsection, § 18-3-302(2), C.R.S.1998, separately provides that a person is guilty of second degree kidnapping who takes, "entices, or decoys away" any child under the age of eighteen. Contrary to defendant's argument, we do not read this provision as defining all circumstances in which seizure without force constitutes second degree kidnapping. Rather, we read § 18-3-302(2) as addressing the specific vulnerability of children to being enticed to accompany a kidnapper, even without actual deceit.

In sum, based on our construction of § 18-3-302(1), the evidence was sufficient to establish that defendant "seized" the victim "without consent." We therefore reject defendant's contention that the evidence was insufficient to sustain his conviction for second degree kidnapping.

### III.

■■■ Defendant's next contention is that the trial court erred in admitting a crime scene photograph depicting the victim's face and hair covered in peanut butter. We disagree.

During trial, the prosecution introduced evidence that, several months before the murder, defendant had stated that putting peanut butter on a corpse's head would attract wild animals, making the body more difficult to identify. The prosecutor then introduced a photo showing the dead victim's face and hair covered with peanut butter.

■ It is within the discretion of the trial court to determine whether to admit photographs of a victim in a homicide prosecution. The determination is made by weighing the probative value of the photographs against possible prejudice to the defendant that may result from the jury's viewing them. *People v. Guffie*, 749 P.2d 976 (Colo.App.1987). The trial court's decision will be reversed only upon a showing of an abuse of discretion. *People v. Viduya*, 703 P.2d 1281 (Colo.1985).

■ Photographs are not inadmissible simply because the defendant stipulates to the matter depicted or because they visually depict testimony already given. *People v. Dobson*, 847 P.2d 176 (Colo.App.1992). Further, otherwise relevant photographs are not rendered inadmissible solely because they reveal shocking details of the crime. *People v. Jones*, 184 Colo. 96, 518 P.2d 819 (1974).

In *People v. White*, 199 Colo. 82, 606 P.2d 847 (1980), the trial court admitted into evidence photographs taken at the time of an autopsy that depicted the victim's head and face. The purpose was to show the appearance of the victim and the location and nature of the victim's wounds. The supreme court concluded that the trial court had applied the proper balancing test, that the possible inflammatory effect of the photographs did not "far outweigh" their probative value, and that the trial court had not abused its discretion in admitting the evidence.

Here, the record reflects that the trial court applied the proper balancing test. We cannot say the possible inflammatory effect of the photograph substantially outweighed its probative value. Thus, the trial court did not abuse its discretion in admitting the photograph into evidence.

## IV.

■ Defendant's final contention is that his conviction of conspiracy to commit felony murder must be vacated because, as a logical and legal impossibility, it is not a cognizable crime. The People do not concede defendant's position, but concur that the conviction must be vacated because defendant was also convicted of conspiracy to commit premeditated murder. We conclude that the conviction for conspiracy to commit felony murder must be vacated, as well as his conviction for felony murder.

Here, because defendant's two conspiracy convictions are based on a single agreement, he committed only one crime. Hence, only one judgment and one sentence may be imposed. *See People v. Rodriguez*, 914 P.2d 230 (Colo.1996); *People v. Lowe, supra.*

The problems created by the imposition of two convictions and sentences for a single crime are not entirely identical to those posed by two convictions for otherwise valid crimes that are duplicative. Nevertheless, the supreme court has determined that in both circumstances, one conviction and sentence should be retained and the other conviction and sentence vacated. *People v. Glover*, 893 P.2d 1311 (Colo.1995); *see also People v. Rodriguez, supra.*

■ A trial court should give as much effect to the jury's verdicts as it can without running afoul of the defendant's constitutional and statutory rights. Thus, when one of several convictions must be vacated, the court must retain the combination of offenses that produces the most convictions and the longest sentences. *People v. Bartowsheski*, 661 P.2d 235 (Colo.1983); *see also People v. Rodriguez, supra* ; *People v. Lee*, 914 P.2d 441 (Colo.App.1995).

Pursuant to § 18–2–201, C.R.S.1998, the conspiracy convictions, if otherwise valid, would have been class 2 felonies with the same punishment. To determine which to vacate, we must therefore turn to other considerations.

### A.

■ The convictions for conspiracy to commit felony murder and murder after deliberation paralleled defendant's convictions for the substantive crimes of felony murder and murder after deliberation. These convictions were for the killing of a single victim.

Like the conspiracy convictions, the murder convictions are not for separate and independent offenses. Rather, felony murder and murder after deliberation are merely

different theories of prosecution of a single first degree murder. Thus, one conviction and sentence must be vacated. *See People v. Glover, supra.* And, in determining which conviction and sentence to vacate, we again must maximize the effect of the jury's verdicts. *People v. Rodriguez, supra*; *People v. Bartowsheski,*

Here, in addition to murder and conspiracy to commit murder, the jury also convicted defendant of kidnapping. Because kidnapping was the predicate felony for the felony murder charge, and conviction for this lesser-included offense would be precluded under § 18–1–408(1), C.R.S.1998, defendant cannot be simultaneously convicted of kidnapping and felony murder. However, the elements of murder after deliberation do not include proof of the same facts necessary to establish the commission of the kidnapping. Thus, in order to retain the conviction for kidnapping, the conviction and sentence for murder after deliberation should be retained and the conviction and sentence for felony murder should be vacated. *See People v. Bartowsheski, supra*; *People v. McCormick,* 881 P.2d 423 (Colo.App.1994).

### B.

We have concluded that one conspiracy conviction and sentence must be vacated, as well as the conviction and sentence for felony murder. If the conviction for conspiracy to commit felony murder is also vacated, it becomes unnecessary to address defendant's separate challenge to that conviction. At the same time, the effect of the jury verdicts is maximized by retaining the convictions for first degree murder after deliberation, conspiracy to commit first degree murder after deliberation, and second degree kidnapping.

That part of the judgment for convictions of first degree murder after deliberation, conspiracy to commit first degree murder after deliberation, and second degree kidnapping is affirmed. The convictions and related sentences for felony murder and conspiracy to commit felony murder are vacated, and the cause is remanded with directions that

the mittimus be corrected to indicate these changes.

Judge MARQUEZ and Judge RULAND, concur.