22CA0875 Peo v Avila 10-03-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA0875
Adams County District Court No. 18CR3756
Honorable Patrick H. Pugh, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Deshawn Anthoney Avila,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE FOX
Johnson and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 3, 2024

Philip J. Weiser, Attorney General, Carmen Moraleda, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Tanja Heggins, Alternate Defense Counsel, Denver, Colorado, for Defendant-
Appellant

¶ 1     Defendant, Deshawn Anthoney Avila, appeals the judgment of conviction entered on jury verdicts finding him guilty of attempted second degree murder, attempted sexual assault, and first degree assault.  We affirm.

I.     Background

¶ 2     The victim, A.V., testified that Avila was her ex-husband's first cousin, and before the assault, he was her close friend.  On the evening in question, the victim invited Avila to go to a nightclub with some friends.  Avila and the victim returned to her apartment around 2 a.m., and she offered that Avila could sleep in her bed and that she would sleep in her son's bedroom.

¶ 3     The victim testified that she awoke to Avila attacking her on her son's bedroom floor.  She testified that she had a head wound that was bleeding profusely, that one of her eyes was swollen shut, and that Avila strangled her until "everything was black."  A frying pan was later determined to be the weapon used to hit the victim's head.

¶ 4     The victim also testified that her pants were unbuttoned and pulled down partially, although she had no memory of a sexual assault occurring.  The victim eventually fought Avila off, and he

fled the scene.  She called 911, and an ambulance transported her to the emergency room.

¶ 5    The prosecution charged Avila with attempted first degree murder, three counts of sexual assault, two counts of first degree assault, and two crime of violence sentence enhancers.  The prosecution later amended the sexual assault counts to attempted sexual assault.

¶ 6    At trial, Avila did not dispute that the victim was brutally attacked but argued that he was not the perpetrator.  To support the victim's testimony that Avila committed the assault, the prosecution presented evidence that (1) Avila's DNA was found on the handle of the frying pan; (2) Avila left his phone at the victim's apartment when he fled; (3) there were no signs of forced entry in the victim's apartment; and (4) Avila had scratches and bruises on his body consistent with defensive wounds.

¶ 7    A jury found Avila guilty of the lesser included offense of attempted second degree murder, attempted sexual assault, and first degree assault.  The court sentenced Avila to twenty-five years to life in the Department of Corrections' custody.  It imposed a determinate sentence of twenty-five years on the attempted murder

count, ten- and twelve-year terms on the assault counts, and indeterminate sentences of ten years to life on the sexual assault counts, all to run concurrently.

## II. Trial Errors

¶ 8 On appeal, Avila challenges two of the trial court's evidentiary rulings that he claims individually or cumulatively require reversal. He first asserts that the trial court erroneously excluded evidence of another male's DNA on the victim's body under the rape shield statute. He then asserts that the court admitted photographs of the victim's injuries that were unnecessarily cumulative and prejudicial under CRE 403.

### A. Standard of Review

¶ 9 Avila asserts that his challenges are of constitutional dimension. "Only those errors 'that specifically and directly offend a defendant's constitutional rights are "constitutional" in nature.'" *People v. Flockhart*, 2013 CO 42, ¶ 20 (quoting *Wend v. People*, 235 P.3d 1089, 1097 (Colo. 2010)).

¶ 10 Trial courts retain broad discretion in determining the admissibility of evidence and the extent and type of cross-examination they will allow. *People v. Lopez*, 2016 COA 179, ¶ 43.

But "[a]n erroneous evidentiary ruling may rise to the level of constitutional error if it deprived the defendant of any meaningful opportunity to present a complete defense." *People v. Conyac*, 2014 COA 8M, ¶ 93. Possible confrontation clause violations are reviewed de novo, *People v. Houser*, 2013 COA 11, ¶ 57, and warrant reversal unless harmless beyond a reasonable doubt, *People v. Johnson*, 2021 CO 35, ¶ 17.

¶ 11     The first claimed error did not deprive Avila of his only means of testing prosecution evidence. *See Conyac*, ¶¶ 93-94. Indeed, Avila was afforded the opportunity to highlight the absence of his own DNA on the victim's body, impeach the victim's credibility, cross-examine prosecution witnesses, present witnesses in his defense, and make an opening statement and closing argument. *See People In Interest of D.F.A.E.*, 2020 COA 89M, ¶ 58; *see also Conyac*, ¶ 109 ("Colorado courts have repeatedly concluded that the rape shield statute does not violate a defendant's right to confrontation or cross-examination."). Neither did the evidentiary claim invoking CRE 403 specifically and directly offend a constitutional right. *See Flockhart*, ¶ 20. Thus, we review these issues like any other evidentiary claim of error.

¶ 12     We review a trial court's evidentiary rulings for an abuse of discretion.  *Rojas v. People*, 2022 CO 8, ¶ 16; *see also People v. Hood*, 2024 COA 27, ¶ 6 ("We review a trial court's . . . determination of evidence's admissibility under the rape shield statute[] for an abuse of discretion.") (citation omitted); *Johnson*, ¶ 16 ("[W]e review a trial court's determination of whether a party opened the door to otherwise inadmissible evidence for an abuse of discretion.").  A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair or where it applies an incorrect legal standard.  *People v. Rodriguez*, 2022 COA 98, ¶ 12.

¶ 13     We review preserved evidentiary errors under the harmless error standard of reversal.  *See Hagos v. People*, 2012 CO 63, ¶ 12.

### B.     Rape Shield Statute

¶ 14     Avila contends that the trial court violated his right to present a complete defense by prohibiting him from cross-examining a DNA expert about the presence of another male's DNA on the victim's external genitalia and breasts under the rape shield statute.  He further contends that even if the evidence was inadmissible under that statute, the prosecution opened the door to its admission.

## 1. Additional Background

¶ 15    Anticipating the prosecution's DNA expert witness, defense counsel informed the court that an unknown male DNA profile, from which Avila was excluded, was developed from swabs of the victim's breasts and external genitalia. The DNA evidence was not drawn from a specific biological fluid such as semen or saliva; the prosecutor explained it was "likely touch DNA coming from skin cells." Defense counsel wanted to use the information to suggest that someone else committed the sexual assault.

¶ 16    In its ruling, the district court concluded that the DNA was not evidence of a specific instance of sexual conduct under the rape shield statute because there was no proof as to how the DNA got there, how long it had been there, or who it came from. But the court, somewhat perplexingly, further concluded that the evidence fell within the purpose of the rape shield statute and that no exception applied to allow its admission.

¶ 17    Regarding opening the door, the court ruled that there was no viable evidence of an alternate suspect, so the prosecution did not open the door to the DNA's admission. Importantly, the court limited its evidentiary ruling to the unknown DNA profile; Avila was

allowed to, and did, introduce testimony that his own DNA was not found on the victim's body.

### 2. Applicable Law and Analysis

¶ 18     Under the rape shield statute, evidence of specific instances of a victim's prior or subsequent sexual conduct is presumptively irrelevant. § 18-3-407(1), C.R.S. 2024. We interpret "sexual conduct," as used in the statute, broadly. *People v. Williamson*, 249 P.3d 801, 803 (Colo. 2011). But evidence does not fall within the rape shield statute's purview "simply because it might indirectly cause the finder of fact to make an inference concerning the victim's prior sexual conduct." *People v. Cobb*, 962 P.2d 944, 951 (Colo. 1998).

¶ 19     The presumption of irrelevance does not apply to "evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, disease, or any similar evidence of sexual intercourse" offered to show that "the act or acts charged were or

7

were not committed by the defendant." § 18-3-407(1).[1] Evidence offered under an exception to the rape shield statute must still comply with the standard evidentiary rules. *Hood,* ¶ 18.

¶ 20 In *Hood,* ¶¶ 13, 15, a division of this court recently held that "the mere presence of someone else's DNA on a person's external genitalia, standing alone," does not amount to evidence of a specific instance of prior or subsequent sexual conduct within the meaning of the rape shield statute. In that case, the DNA evidence was not offered to prove an alternate suspect theory or that the victim engaged in sexual conduct. *Id.* at ¶ 13. Instead, it was offered to show that DNA evidence remained on the victim's body after she showered, undercutting the prosecution's theory that the defendant's DNA must have been washed away. *Id.* at ¶ 14. The division in *Hood* rejected a broad holding that only DNA drawn from sexual biological fluids can implicate the rape shield statute, leaving

---

[1] This statutory subsection used to appear at section 18-3-407(1)(b), C.R.S. 2023. In 2024, the General Assembly passed H.B. 24-1072, "Protection of Victims of Sexual Offenses," wherein the subsection was moved to section 18-3-407(1), C.R.S. 2024. *See* Ch. 123, sec. 2, § 18-3-407, 2024 Colo. Sess. Laws 408. Because H.B. 24-1072 did not substantively change the portions of the statute relevant here, we elect to cite the current version.

room for cases where unspecified DNA evidence could implicate the rape shield statute on different facts. *See id.* at ¶ 15.

¶ 21     "[A] trial court may exclude evidence of an alternate suspect that 'has only the most minimal probative value, and which requires a jury to engage in undue speculation as to the probative value of that evidence.'" *People v. Cook*, 2014 COA 33, ¶ 39 (quoting *People v. Salazar*, 2012 CO 20, ¶ 17).

¶ 22     But even assuming the DNA evidence fell under one of the exceptions of the rape shield statute, or that the statute was completely inapplicable, the evidence was nonetheless inadmissible because it was irrelevant, CRE 401, and prejudicial, CRE 403. *See People v. Aarness*, 150 P.3d 1271, 1277 (Colo. 2006) (we may affirm on any ground supported by the record); *Hood*, ¶ 18 (DNA evidence must still be admissible under standard evidentiary rules). Thus, we affirm the trial court's evidentiary ruling, albeit on different grounds.

¶ 23     First, the DNA evidence had minimal probative value. Testimony established that touch DNA is developed from skin cells that people shed, and it can often be found in places where people spend a lot of time, such as in their own home. Touch DNA can be

9

transferred from object to object and from person to person, making it difficult to determine its origin. The prosecutor represented to the court, via offer of proof, that the DNA expert would testify that "touch DNA of the sort identified in her report could . . . be around indefinitely" depending on numerous factors. Defense counsel admitted that there was no way to prove how long the DNA had been present.

¶ 24　　Given the innumerable ways that the DNA could have ended up on the victim's body — whether from her clothes, hands, or otherwise — the presence of male DNA on the victim's external genitalia and breasts had minimal probative value, especially where evidence showed that the victim lived with her son and slept in his bed before the attack. *See People v. Young*, 2014 COA 169, ¶ 73 (recognizing the low probative value of touch DNA); *see also People v. Harris*, 43 P.3d 221, 226 (Colo. 2002) (rejecting admissibility of a prior sexual encounter offered to explain that someone else caused the victim's vaginal abrasion).

¶ 25　　This evidence was not probative in the same manner as analyzed in *Hood*. That case involved a different theory of relevance; rather than being offered to prove that an unknown,

alternate suspect committed the assault, the DNA was offered to rebut the prosecution's theory that the defendant's DNA was not found on that victim because she showered after the assault. *Hood*, ¶ 14. Another person's DNA on the victim's body, which survived showering, directly rebutted that theory. *Id.* Here, the evidence was offered to prove sexual conduct, and because touch DNA is not terribly probative of a sexual act, the evidence here was far less useful than in *Hood.*

¶ 26     The most probative aspect of the DNA expert's report was that none of *Avila's DNA* was found on the victim's external genitalia and breasts. This evidence most directly rebutted the prosecution's theory that Avila sexually assaulted the victim, and Avila had the opportunity to thoroughly cross-examine the expert on that fact.

¶ 27     Second, the prejudice that could have resulted from the touch DNA's admission was substantial. "The purpose of Colorado's rape shield statute is 'to protect sexual assault victims from humiliating public fishing expeditions into their past sexual conduct.'" *Id.* at ¶ 12 (quoting *Cook*, ¶ 36); *see also People v. Melillo*, 25 P.3d 769, 777 (Colo. 2001) ("[I]n weighing the relevance of such evidence

11

against its potentially prejudicial effect, a trial court may consider the policy concerns underlying the rape shield statute.").

¶ 28    In *Hood*, ¶ 22, the division reasoned that the DNA evidence was not highly prejudicial because there were nonsexual explanations for how the DNA could have been transferred to the victim.  Here, however, the evidence was offered to prove the sexual inference.  Thus, it was designed to probe the victim's sexual history, a purpose that our case law largely discourages precisely because of its irrelevance, regardless of the rote applicability of the rape shield statute.  *See Williamson*, 249 P.3d at 802.

¶ 29    For these reasons, the trial court correctly excluded the evidence of another male's DNA on the victim's external genitalia and breasts.  We perceive no violation of the victim's substantial rights on these facts.  *See Harris*, 43 P.3d at 227 (rejecting Fifth and Sixth Amendment challenges in the rape shield context when the proffered evidence was irrelevant because those rights "require only that the accused be permitted to introduce all relevant and admissible evidence"); *People v. Villa*, 240 P.3d 343, 355 (Colo. App. 2009) (same).

### 3. Opening the Door

¶ 30    Avila argues that even if the evidence was inadmissible, the prosecution opened the door to its admission in two ways.  First, the prosecution opened the door by eliciting the victim's testimony that nobody else was in her home on the night in question (to the best of her knowledge).  Second, the prosecution opened the door by eliciting testimony that other male DNA was found on the frying pan handle.

¶ 31    "[A]lthough the Rape Shield Statute bars evidence of a rape victim's . . . past sexual conduct, the defense may still introduce such evidence if the prosecution makes the evidence relevant by 'opening the door' to the evidence."  *People v. Murphy*, 919 P.2d 191, 195 (Colo. 1996).  The "opening the door" concept represents an effort by courts to prevent one party from "gaining and maintaining an unfair advantage" at trial through "selective presentation of facts that, without being elaborated or placed in context, create an incorrect or misleading impression."  *Id.*  But application of the opening the door concept is nevertheless subject to considerations of relevance, CRE 401, and prejudice, CRE 403.  *See also Harris*, 43 P.3d at 227; *Melillo*, 25 P.3d at 775.

¶ 32    Neither piece of testimony opened the door to evidence of another male's DNA on the victim's external genitalia and breasts. The first statement, that nobody else was in the victim's home to the best of her knowledge, did not create an incomplete or misleading impression requiring admission of the DNA evidence. The defense's theory seems to be that the victim was not allowed to testify to the absence of others in her home without opening the door to the fact that another man's DNA was found on her because the DNA was probative of an alternate suspect in the home at the time of the assault. The foregoing analysis explains why that theory fails.

¶ 33    Similarly, the presence of another male's DNA profile on the weapon did not leave an incorrect or misleading impression requiring admission of the DNA on the victim's body. There was no evidence that the male DNA present on the frying pan matched the DNA on the victim's body. Nor was any concrete evidence presented that supported an alternate suspect theory. To the contrary, the evidence showed that touch DNA can come from innumerable sources and that the victim's son — a male depositing touch DNA —

lived in the home. For these reasons, the court acted within its discretion in rejecting the defense's opening the door theory.

### C. Injury Photographs

¶ 34 Avila next contends that the trial court abused its discretion in admitting numerous photographs of the victim's injuries that were needlessly cumulative. We disagree.

### 1. Additional Background

¶ 35 At the emergency room, the treating physician concluded that the victim sustained a serious bodily injury. Based on the victim's representations about the assault, the treating physician referred her to a forensic nurse examiner for a sexual assault examination. A forensic nurse later testified about the victim's injuries.

¶ 36 During a bench conference, the prosecutor expressed her intention to introduce seventy-nine photographs of the victim's injuries. Defense counsel objected under CRE 403, arguing that the photographs were cumulative and prejudicial. The court invited defense counsel to review each exhibit and object to the ones that were cumulative.

¶ 37 Defense counsel did not object to every exhibit the prosecution offered. Instead, he raised groups of exhibits containing what he

believed were duplicates, arguing that approximately forty of the seventy-nine total exhibits were inadmissible. Defense counsel surveyed the exhibits injury by injury — generally stipulating to the prosecution's admission of one photograph per injury.

¶ 38 The court then surveyed each group that defense counsel challenged, and it excluded some cumulative photographs. It excluded nine of the forty objected-to exhibits, admitting a total of seventy exhibits of the seventy-nine offered. The below chart documents the groups defense counsel challenged, and the court's admission or exclusion of exhibits within those categories.

| Injury | Exhibit #'s | Total | Admitted | Excluded |
|---|---|---|---|---|
| Forehead cut | 14-18 | 5 | 3 | 2 |
| Black eye, right | 19-23, 25-26, 32, 40-41 | 10 | 8 | 2 |
| Hairline cut | 27-29 | 3 | 2 | 1 |
| Neck, front | 34-35 | 2 | 2 | 0 |

| | | | |
|---|---|---|---|---|
| Neck, side | 36-38 | 3 | 3 | 0 |
| Shoulder bruises | 42-46 | 5 | 4 | 1 |
| Left arm | 47-49 | 3 | 3 | 0 |
| Wrist bruises, left | 50-53 | 4 | 4 | 0 |
| Hand bruises, left | 56-57 | 2 | 2 | 0 |
| Back abrasions | 58-60 | 3 | 3 | 0 |
| Bicep bruise, right | 63-65 | 3 | 3 | 0 |
| Forearm bruise, right | 67-72 | 6 | 5 | 1 |
| Wrist bruise, right | 75-77 | 3 | 3 | 0 |

| | | | | |
|---|---|---|---|---|
| Palm, left | 78-82 | 5 | 4 | 1 |
| Lower back abrasion | 86-87 | 2 | 1 | 1 |
| Mouth petechiae | 95-96 | 2 | 2 | 0 |

The prosecutor referenced some, but not all, of the admitted photographs during the forensic nurse's subsequent testimony.

### 2. Applicable Law and Analysis

¶ 39 CRE 403 provides that relevant evidence may be excluded if its probative value is substantially outweighed by, as relevant here, the danger of needless presentation of cumulative evidence. "Evidence that is 'decidedly different in character and impact' is not cumulative." *People v. Vanderpauye*, 2021 COA 121, ¶ 47 (quoting *People v. Genrich*, 2019 COA 132M, ¶ 117) (Berger, J., specially concurring), *aff'd*, 2023 CO 42.

¶ 40 Photographs of a victim's injuries are generally relevant because they show "whether and how the offenses were committed." *People v. Herrera*, 2012 COA 13, ¶ 34. Photographs are not

inadmissible merely because they visually depict testimony already given. *People v. Maass*, 981 P.2d 177, 187 (Colo. App. 1998). Otherwise relevant photographs are not rendered inadmissible solely because they reveal shocking details of the crime. *Id.*

¶ 41    "Courts are given broad discretion in performing the CRE 403 balancing test, and a trial court's balancing decision will not be disturbed absent an abuse of discretion." *People v. Garrison*, 2012 COA 132M, ¶ 16.

¶ 42    We perceive nothing manifestly arbitrary, unreasonable, or unfair about the trial court's evidentiary ruling here. *See People v. Pahlavan*, 83 P.3d 1138, 1140 (Colo. App. 2003) ("The fact that evidence is cumulative does not, by itself, render the evidence inadmissible. Instead, admission of cumulative testimony is an abuse of discretion only if it is manifestly arbitrary, unreasonable, or unfair under the circumstances.").

¶ 43    The prosecution had the burden to prove, as relevant here, that the victim was assaulted and sustained serious bodily injury. Bearing that in mind, the trial court carefully reviewed the challenged photographs to determine whether they depicted the same image or whether they showed a different angle, a different

scale, or a measurement of the injury using a ruler. It ruled that the admitted photographs were decidedly different in character based on those features. *See Vanderpauye,* ¶ 47. Careful not to needlessly present cumulative prejudicial evidence, the court excluded exhibits that were substantially similar. Having done that balancing, and reaching a reasonable result, we do not believe the trial court abused its discretion. *See Vigil v. People,* 2019 CO 105, ¶ 14 ("[R]eviewing courts have . . . been admonished from considering merely whether they would have reached the same conclusion and, instead, must affirm as long as the trial court's decision fell within a range of reasonable options.").

¶ 44    Further, even if some of the admitted exhibits bordered on the cumulative side, that was not necessarily a basis to exclude them because they corroborated the victim's testimony about her assault and the forensic nurse's testimony about the victim's documented injuries. *See Maass,* 981 P.2d at 187.

### III.    Cumulative Error

¶ 45    Avila argues that together the alleged foregoing errors, even if harmless individually, constitute cumulative error requiring reversal. "For reversal to occur based on cumulative error, a

reviewing court must identify multiple errors that collectively prejudice the substantial rights of the defendant, even if any single error does not." *Howard-Walker v. People*, 2019 CO 69, ¶ 25. But the claimed errors here do not merit reversal, alone or cumulatively, because we conclude that no error occurred. *See People v. Daley*, 2021 COA 85, ¶ 141 ("The doctrine of cumulative error requires that numerous errors occurred, not merely that they were alleged.").

## IV. Disposition

The judgment is affirmed.

JUDGE JOHNSON and JUDGE SCHOCK concur.